UNITED STATES of America, Appellee,

v.

**Alfred RUIZ–GARCIA, a/k/a Wilfredo Cintron Delgado, a/k/a Wilfredo Cintron, Defendant, Appellant.**

No. 89–1517.

United States Court of Appeals, First Circuit.

Heard Sept. 6, 1989.
Decided Sept. 28, 1989.

Bruce B. Hochman, with whom Black, Lambert Coffin & Haines, Portland, Me., was on brief for defendant, appellant.

Margaret D. McGaughey, Asst. U.S. Atty., Portland, Me., with whom Richard S. Cohen, U.S. Atty., Augusta, Me., and Nich-

olas M. Gess, Asst. U.S. Atty., Portland, Me., were on brief for appellee.

Before SELYA, Circuit Judge,
ALDRICH and GIBSON *, Senior
Circuit Judges.

SELYA, Circuit Judge.

Defendant-appellant Alfred Ruiz Garcia was charged, *inter alia*, with conspiracy to possess in excess of five hundred grams of a Schedule II controlled substance (cocaine), intending to distribute the same. 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) (1982). After defendant stipulated to certain relevant facts, the district court conducted a thorough Fed.R.Crim.P. 11 inquiry, ascertained that defendant understood the stipulations, accepted defendant's guilty plea on the conspiracy count, and ordered a presentence investigation report (PSI Report). *See* Fed. R.Crim.P. 32(c). When the PSI Report was delivered, defendant and his counsel reviewed it and lodged certain objections. During the presentence conference, and thereafter, the district court undertook to resolve these objections. On April 26, 1989, the court issued a procedural order cataloguing "the only matters [remaining] in dispute...." At the same time, the court scheduled a hearing for May 5, directing defendant and his attorney "to be prepared to present any evidence relevant to sentencing issues." The order specifically noted "that there is no dispute that Defendant is subject to adjudication as a career offender pursuant to Guideline § 4B1.1...."

On May 5, defendant ratified what had transpired at the presentence conference (including his counsel's concessions), elected to present no substantive evidence [1], and effectively rested on cross-questioning of Vincent Frost (the probation officer who authored the PSI Report). Following legal arguments and allocution, the judge made a series of findings; computed the sentencing range as per the Guidelines (262–320 months) [2]; and imposed sentence within,

---

* The Honorable Floyd R. Gibson, of the Eighth Circuit, sitting by designation.

1. Defendant did present testimony from Wanda Yvette Mollier Roman, his common-law wife, which was in the nature of a plea for clemency.

albeit at the high end of, the range (320 months). This appeal followed.

We have examined the record with meticulous care and are fully persuaded that the assignments of error hawked by appellant, to the extent germane, are altogether meritless. Rather than plod laboriously through each one, we set out a representative sampling.

1. Appellant complains that the district court violated his rights by refusing to sentence below the indicated range. Yet, the government did not urge a downward departure from the Guidelines, nor does appellant give any credible reason why one might be warranted. The complaint is frivolous. *See United States v. Wright*, 873 F.2d 437, 442 (1st Cir.1989).

■■■ 2. Appellant insists that the district court erred in classifying him as a "career offender" within the ambit of Guideline § 4B1.1. He is wrong. In the first place, appellant conceded the point not once, but repeatedly, in the district court. He cannot now adopt a new (and contradictory) strategy. Absent extraordinary circumstances (not extant here), concessions voluntarily made by a counseled defendant cannot be unilaterally withdrawn on appeal. *See, e.g., United States v. Coady*, 809 F.2d 119, 121 (1st Cir.1989); *cf. United States v. Lott*, 870 F.2d 778, 781 (1st Cir.1989) (where government stipulated to defendants' standing below, it may not on appeal claim lack of standing). Moreover, we have reviewed the evidence of defendant's prior convictions and find the government's proof ample to show that defendant's criminal history met the "career offender" criteria.

■■■ 3. Appellant says that the district court erred in finding that he had obstructed justice within the meaning of Guideline § 3C1.1. The point, however, is of purely academic interest. The obstruction-of-justice finding was material only to computation of the "total offense level." Guideline § 1B1.1(e). But where the career-criminal offense level exceeds the total offense level otherwise applicable, the former controls. *See* Guideline § 4B1.1; *see generally United States v. Alves*, 873 F.2d 495, 497 (1st Cir.1989). That is the situation here.[3] We hasten to add that, even were the point not moot, the judge could not conceivably be faulted for finding that a defendant who gave a false name at arraignment, and attempted to maintain his fictitious identity in ensuing judicial proceedings, had engaged "in conduct calculated to mislead or deceive ... those involved in a judicial proceeding, or to otherwise willfully interfere with the disposition" of the charges against him. Guideline § 3C1.1, Commentary.

The exigencies of the case require no more; appellant's remaining nit-picks are as jejune as these three examples. We grasp the occasion, however, to establish a guideline of our own. For almost a century,[4] conventional wisdom taught that: "If there is one rule in the federal criminal practice which is firmly established, it is that the appellate court has no control over a sentence which is within the limits allowed by a statute." *Gurera v. United States*, 40 F.2d 338, 340–41 (8th Cir.1930). The rule's sweep was very broad, notwithstanding the existence of "a narrow band of exceptions." *United States v. Ponce Federal Bank*, 883 F.2d 1, 5 (1st Cir.1989)

2. The court, taking into account defendant's career offender status, determined the applicable offense level to be 34, and defendant's criminal history category to be VI. The court then employed the grid to arrive at the appropriate sentencing range. For a fuller explanation of the applicable mechanics, see *United States Sentencing Commission Guidelines Manual* § 1B1.1 at 1.13 (1988); *see also United States v. Diaz–Villafane*, 874 F.2d 43, 47–48 (1st Cir.1989); *United States v. Wright*, 873 F.2d 437, 440 (1st Cir. 1989).

3. Defendant's total offense level, including upward adjustments but apart from any considera-

tion of his criminal career, was 30. The applicable offense level under the career offender table, however, was 34, and thus governed.

4. Prior to 1891, federal appellate courts had, and occasionally exercised, the power to revise harsh sentences on appeal. *See* Symposium, *Appellate Review of Sentences*, 32 F.R.D. 249, 259 & nn. 5–6 (1962) (Kaufman, J.) (discussing history and transition); *see also United States v. Rosenberg*, 195 F.2d 583, 604–07 & nn. 24–30 (2d Cir.), *cert. denied*, 344 U.S. 838, 73 S.Ct. 21, 97 L.Ed. 652 (1952).

(per curiam). By and large, sentencing decisions were the district courts' prerogative. Sentences were infrequently appealed. When appeals were taken, success was hen's-teeth rare.

The passage of enabling legislation, *see* Sentencing Reform Act, as amended, 18 U.S.C.A. §§ 3551–3585 (West 1985 & Supp. 1988); 28 U.S.C.A. §§ 991–998 (West Supp. 1988), and the ensuing adoption of the Guidelines, radically altered the legal landscape. For offenses committed on or after November 1, 1987, application of the Guidelines, and departures therefrom, may routinely be appealed. *See* 18 U.S.C.A. § 3742(a)-(e). With availability of counsel guaranteed on direct appeal, and little to lose by trying, defendants may well be tempted to seize opportunity for opportunity's sake. Indeed, we anticipate that appeals from sentencing decisions will become much more commonplace. To the extent that such appeals raise valid questions, we will respond in kind. On the other hand, if a criminal defendant protests his sentence merely because he has time on his hands, and without any supportable basis in law or fact—as in this case—we will henceforth respond summarily. Sentencing appeals prosecuted without discernible rhyme or reason, in the tenuous hope that lightning may strike, ought not to be dignified with exegetic opinions, intricate factual synthesis, or full-dress explications of accepted legal principles. Assuredly, a criminal defendant deserves his day in court; but we see no purpose in wasting overtaxed judicial resources razing castles in the air.

*Affirmed.*