UNITED STATES of America, Appellee,

v.

Corrine Marie DENARDI, Gary R. Tuttle, Cindy L. Scandreth, a/k/a Cindy L. Redding.

Appeal of Cindy L. REDDING.

No. 89–3365.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Oct. 19, 1989.

Decided Dec. 19, 1989.

Rehearing and Rehearing In Banc Denied Jan. 24, 1990.

William P. Weichler, Ambrose & Friedman, Erie, Pa., for appellant.

Charles D. Sheehy, Acting U.S. Atty., Paul J. Brysh, Constance M. Bowden, Asst. U.S. Attys., Pittsburgh, Pa., for appellee.

Before BECKER, COWEN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

This is an appeal by defendant from concurrent sentences of 24 months imposed after conviction on a two-count indictment charging conspiracy to distribute cocaine and possession of cocaine with intent to distribute subsequent to November 1, 1987.

Defendant first contends that her sixth amendment right to counsel and fourteenth amendment right to a fair trial were prejudicially violated by the conduct of the trial judge.

The first portion of defendant's argument relates to comments made by the judge before the jury was selected. We have examined the remarks and conclude without further elaboration that they fall far short of chilling counsel's ability to fairly represent his client. The defendant next attacks the judge's comments during trial. While some of the judge's comments were unfortunate, whether viewed singly or together, they fail to support a conclusion that defendant was thereby deprived of fair representation or that defendant did not receive a fair trial. Perfect equanimity on the part of a trial judge is not mandated by the Constitution.

Defendant next argues that the following remarks by the Assistant United States Attorney during his closing argument prejudicially violated her fifth amendment privilege against self-incrimination:

More importantly, one thing Mr. Weichler [defendant's counsel] stayed away from throughout was the tape recording [conversation between a former codefendant and this defendant]. This guy is a drug dealer. This person is no good. Do you notice no one ever got up and said anything that could explain away the discussion on that tape? How much was there? Was it 550 then? Ladies and gentlemen, I think I've said it already, but I say it again, the only witness who can't lie. There is nothing that can change that testimony. It has been consistent throughout.

We need not decide whether the comment constituted a constitutional violation because, even if it did, we are satisfied that the statement was harmless error beyond a reasonable doubt. We say this because of the damning testimony of two government witnesses who had originally been indicted along with defendant but who pleaded guilty before trial. A tape recording, to which defendant was a party, and other documentation only added to the great strength of the government's case. Cumulatively viewed, the evidence constituted overwhelming proof that defendant committed the crimes charged.

Finally, defendant argues that certain mitigating factors tendered by defendant were so compelling that they exceeded the extent to which such factors were considered by the Sentencing Commission when it adopted the pertinent sentencing range. Thus, they contend that a deviation below the recommended sentencing guideline range was required. *See* 18 U.S.C. § 3553(b).[1]

---

1. The Sentencing Reform Act confines the circumstances under which a sentencing court may depart from the Guidelines as follows:
    The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.
    18 U.S.C. § 3553(b) (Supp. V 1987).

The defendant's brief notes that at the time of sentence the court identified several mitigating factors:

> These mitigating factors included the defendant's cooperation with the government, the absence of a prior criminal record, and exemplary work history, and a lifetime of love and devotion to friends and family. In addition to those mitigating factors, the imposition of a sentence within the recommended guideline range in this case occasions an extreme hardship on the defendant's family.

However, in sentencing defendant, the district court stated:

> THE COURT: I find nothing here that permits me to depart from the guidelines, and I am very much guided by them. I recognize all of the favorable points that the defendant has produced, and the best that I can do with those is to apply them to my choice of where within the guidelines the sentence would fall.

Defendant's position is not entirely clear. She may be contending that the district court was laboring under the erroneous impression that it did not have authority to reduce the sentence below the guideline range of 24 to 30 months despite 18 U.S.C. § 3553(b). On this premise, she would necessarily be arguing that the sentence is reviewable, as a matter of law, because of an incorrect understanding of the sentencing guidelines. 18 U.S.C. § 3742(a)(2). *United States v. Cheape,* 889 F.2d 477 (3d Cir.1989), *United States v. Medeiros,* 884 F.2d 75 (3d Cir.1989), *United States v. Russell,* 870 F.2d 18 (1st Cir.1989).

The difficulty with defendant's argument is that we do not read the district court's sentencing remarks as indicating a belief that it lacked the power to deviate downward from the guideline range in a proper case. Rather, as the court said, "I have been asking and trying to get some factor that would justify a deviation, and I just said I haven't found any." One may ask why the district court would be looking for factors that would justify a deviation, if it believed that it lacked authority to deviate.

We think the district court did not misunderstand the law in applying the sentencing Guidelines.

Alternatively, defendant may be contending that applying the guideline range to this case does not reflect the atypical nature of the mitigating circumstances present here. 18 U.S.C. § 3553(b) (Supp. V 1987). *See United States v. Ryan,* 866 F.2d 604, 607 (3d Cir.1989). The government argues that we lack jurisdiction to entertain defendant's appeal to the extent it is based on a discretionary refusal to depart below the guidelines for the offenses involved. Before we address this issue a preliminary matter must be noted.

Certain language in *United States v. Ofchinick,* 877 F.2d 251 (3d Cir.1989) and *United States v. Medeiros,* 884 F.2d 75, 80 (3d Cir.1989), can be read to imply that we may review the merits of a discretionary refusal of a district court to depart downward from the sentencing guidelines. However, no appealability question appears to have been raised in these cases. Under such circumstances, Chapter 8c of our Internal Operating Procedures (requiring adherence to our reported past precedent) does not require us to treat *Ofchinick* and *Medeiros* as binding in deciding on the government's jurisdictional contention. *See United States v. Troup,* 821 F.2d 194 (3d Cir.1987) (lack of jurisdiction in the district court).

We turn now to the jurisdictional issue. We understand defendant to be asserting that the district court abused its discretion in not reducing the sentence below the guideline range because of the atypical nature of the mitigating evidence. The district court, of course, had discretion to grant the request. However, in passing on the request it was required to evaluate the mitigating evidence. This it did and, nevertheless, refused to grant such relief. Surely in such circumstances we cannot review the correctness of such determination unless we first determine that we have jurisdiction to do so.

We look in vain for language governing a defendant's right to appeal the denial of relief under the foregoing circumstances. The portion of the statute providing for appeals by a defendant (18 U.S.C. § 3742)[2] simply does not authorize such an appeal. Certainly § 3742(a)(2) (incorrect application of guidelines) does not apply in the present context. Otherwise, as the government suggests, a discretionary refusal to go below the guidelines would seem also to apply to situations in which a defendant challenged an enhanced departure. Such a result would render § 3742(a)(3) largely superfluous.

Finally, although not relied on by the defendant, we do not believe that 18 U.S.C. § 3553(b), (permitting a deviation from the guidelines under certain circumstances), when read with § 3553(a) (factors to be considered in imposing a sentence) converts an unappealable exercise of discretion into an error of law that may be reviewed under § 3742(a)(1) in some amorphous circumstances. If such a result is desirable, it is for Congress to say so.

We conclude that § 3742(a) does not authorize an appeal in the present circumstances. The persuasive analysis of *United States v. Colon*, 884 F.2d 1550 (2d Cir. 1989) supports our conclusion. *See also United States v. Franz*, 886 F.2d 973 (7th Cir.1989); and *see also United States v. Fossett*, 881 F.2d 976 (11th Cir.1989). *United States v. Lee*, 887 F.2d 888 (8th Cir.1989) is not to the contrary because it involved an appeal from an alleged unlawful sentence.

To the extent this appeal attacks the judgment of the district court on the basis of alleged errors of law by the district court, the judgment will be affirmed. To the extent this appeal attacks the district court's exercise of discretion in refusing to reduce the sentences below the sentencing guidelines, it will be dismissed for lack of appellate jurisdiction.

BECKER, Circuit Judge, concurring in part and dissenting in part.

I join in the majority's opinion insofar as it rejects appellant's fifth, sixth, and fourteenth amendment claims, each of which bears on the validity of her underlying conviction. I disagree strongly, however, with the majority's treatment of the sentencing issues.

As I read the record, the district court felt legally prohibited from departing from the sentencing guidelines. As I see it, whether or not the district court was correct in this regard, the question whether a *discretionary* refusal to depart is appealable simply does not arise. Because the majority decides that question, however, I address it as well.

Despite its novelty, the question whether refusals to depart are appealable has already provoked sharp disagreement. *Compare, e.g., United States v. Colon*, 884 F.2d 1550 (2d Cir.1989) (holding that discretionary refusals to depart are not appealable); *and United States v. Franz*, 886 F.2d 973 (7th Cir.1989) (same) *with, e.g., United States v. Lee*, 887 F.2d 888 (8th Cir.1989) (discussed below in note 11) *and* Yellen, "Appellate Review of Refusals to Depart," 1 Fed. Sentencing Rep. 264 (1988) (arguing that discretionary refusals to depart are and should be appealable). The question is difficult, in part because the Sentencing Reform Act (SRA)[1] provides no clear answer, and in part because it raises fundamental questions about the administration of justice under the regime of guidelines

---

**2.** The pertinent provisions of 18 U.S.C. § 3742 read:

(a) Appeal by a defendant—
A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—
(1) was imposed in violation of law;
(2) was imposed as a result of an incorrect application of the sentencing guidelines; or
(3) is greater than the sentence specified in the applicable guideline range to the extent

that the sentence includes a greater fine or term of imprisonment, probation, or supervised release under section 3563(b)(6) or (b)(11) than the maximum established in the guideline range; or
(4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

**1.** 28 U.S.C. §§ 991–998 and 18 U.S.C. § 3551 *et seq.* (Supp.1987).

sentencing. Because of the importance of today's decision, I feel impelled to explain why I disagree with the majority's conclusion that discretionary refusals to depart are not appealable, even though I do not believe that that question is properly before us.

## I.

The power of a sentencing court to depart from the guidelines is governed by 18 U.S.C. § 3553(b), which provides that

> [t]he court shall impose a sentence of the kind, and within the range, referred to in [the guidelines] unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

Thus, a district court might refuse to depart from the guidelines for either of two quite distinct reasons: first, because it concludes that section 3553(b) prohibits a departure, or second, because it concludes that a departure is simply inappropriate, even if not legally prohibited. The second kind of case involves an exercise of discretion; the first a feeling of legal compulsion, which could lead a court to sentence within the guidelines against its better judgment.

Whether section 3553(b) prohibits departure in some particular case is a question of law.[2] A district court that refuses to depart because it erroneously concludes that section 3553(b) prohibits departure thus commits an error of law. Therefore, we have held that refusals to depart downward are appealable to the extent the defendant argues that the district court failed to recognize its power to depart. *See United States v. Cheape*, 889 F.2d 477 (3d Cir. 1989); *United States v. Medeiros*, 884 F.2d 75 (3d Cir.1989).

When a district court refuses to depart because it feels legally prohibited from doing so, the question of the appealability of *discretionary* refusals to depart does not arise. We review the district court's legal determination that section 3553(b) prohibits departure: if we agree, we simply affirm on that basis, *see Medeiros*, 884 F.2d at 78–80; if we disagree, then we order resentencing, *see Cheape*, 889 F.2d at 479–81. In neither case do we reach the question whether a discretionary refusal to depart is appealable.

As I read the record, the district court in this case believed that section 3553(b) prohibited departure. "I find nothing here that *permits* me to depart from the guidelines," the district court stated in announcing its judgment.[3] The rest of the sentencing transcript confirms that the district court meant what it said, and even suggests that the district court did want to depart. "Where are *we* going to find a basis for deviation from the[ ] guidelines?" the court asked defense counsel. "I have been asking *and trying to get* some factor which would justify a deviation," the court prodded. A sentence at the low end of the applicable guideline range is "[t]he best I can do," the court explained apologetically to the defendant. On this record, I think it clear that the district court felt legally prohibited from departing.

The majority's disposition cannot be justified even assuming the dubious proposition that the basis of the district court's refusal to depart was unclear. When the existence of appellate jurisdiction turns on a lower court's ground of decision, the reviewing court should not construe ambiguity in that regard so as to defeat its own jurisdiction. Thus, in *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the Supreme Court assumed that a state court decision arguably resting on state law would be presumed to rest on federal law absent a clear statement to the contrary.[4] Here, for two reasons, the ar-

---

2. *See, e.g., United States v. Uca*, 867 F.2d 783, 786 (3d Cir.1989); *United States v. Ryan*, 866 F.2d 604, 610 (3d Cir.1989).

3. All quotations are taken from the transcript of the oral sentencing hearing. Thus, all emphases are added.

4. The Court's rule of construction was necessary to secure appellate jurisdiction in *Long* because

gument against allowing ambiguity in the ground of decision to defeat appellate jurisdiction is even stronger than in *Long.* First, parties who litigate federal claims or defenses in state court unsuccessfully have no appeal of right to the Supreme Court, but a defendant who alleges that his sentence was imposed because the district court underestimated the scope of its power to depart downward does, under *Cheape* and *Medeiros,* have an appeal of right to this court. Second, the appealable federal claim in *Long,* to the extent that the lower court decision rested upon it, was upheld;[5] here, the appealable federal claim, to the extent that the lower court decision rested upon it, was rejected.

In view of the foregoing, if the basis of a district court's refusal to depart is unclear, the appropriate disposition is either to construe the ambiguity so as to preserve appellate jurisdiction (the technique adopted by the Supreme Court in *Long* for purposes of its review of state court decisions) or simply to remand to the district court for further clarification (the technique adopted in precisely this context by the First Circuit[6]). Thus, the majority's disposition must rest on the view that the district court *unambiguously* felt authorized to depart in this case, a proposition unsupportable on this record.

I agree with the majority's apparent conclusion that section 3553(b) does not prohibit departure in this case. *See* Maj.Op. at

271 ("The district court, of course, had discretion to grant the request [to depart]."). Because the district court thought otherwise, this case is controlled by *Cheape.* Therefore, instead of dismissing, I would reverse and remand for resentencing on that basis. However, because of the importance of the question whether discretionary refusals to depart are appealable, which the majority insists on deciding, I feel obligated to explain why I disagree with its conclusion on that score as well.

## II.

The statute governing the appealability of federal sentences by convicted defendants provides that

[a] defendant may file notice of appeal in the district court for review of an otherwise final sentence if the sentence—

(1) was imposed in violation of law; or

(2) was imposed as a result of an incorrect application of the sentencing guidelines; or

(3) is greater than the sentence specified in the applicable guideline range ...; or

(4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

18 U.S.C. § 3742(a) (Supp.1987).[7] Whenever a district court refuses to depart from

---

"where the judgment of a state court rests on two grounds, one of which is federal and the other of which is nonfederal in character, [the Supreme Court's jurisdiction under 28 U.S.C. § 1257] fails if the nonfederal ground is independent of the federal ground and adequate to support the judgment." *Fox Film Corp. v. Muller,* 296 U.S. 207, 210, 56 S.Ct. 183, 184, 80 L.Ed. 158 (1935).

**5.** The issue in *Long* was whether police conducting a lawful investigatory stop of a driver could search the inside of his car for weapons. Long asserted that the search violated his rights under the federal and state constitutions, and the Michigan Supreme Court agreed. To the extent that the court's decision was based on the federal constitution, the Supreme Court reversed. *See* 463 U.S. at 1045–52, 103 S.Ct. at 3479–82.

**6.** *See United States v. Russell,* 870 F.2d 18, 20–21 (1st Cir.1989) (retaining jurisdiction but ordering the district court to clarify the basis of its refusal to depart).

**7.** The Eleventh Circuit has stated that section 3742 regulates the scope of review in sentencing appeals, but that appellate jurisdiction itself arises under 28 U.S.C. § 1291. *See United States v. Fossett,* 881 F.2d 976, 979 (11th Cir. 1989). I disagree. Section 3742(a) lists situations in which a defendant "may file a notice of appeal," in partial derogation of the pre-SRA rule, *see, e.g., Dorszynski v. United States,* 418 U.S. 424, 431, 94 S.Ct. 3042, 3046–47, 41 L.Ed.2d 855 (1974), that a sentence within the range authorized by statute and imposed without procedural or constitutional defects is unreviewable. Similarly, section 3742(b) lists situations in which the government "may file notice of appeal," a provision that creates an exception to the general rule, *see, e.g., Will v. United States,* 389 U.S. 90, 96, 88 S.Ct. 269, 274, 19 L.Ed.2d 305 (1967), that the government may not appeal

the sentencing range prescribed by applicable guidelines, subsections 3742(a)(3) and 3742(a)(4) are obviously inapplicable. Moreover, the legislative history of section 3742 makes clear that appellate review is "confine[d]" to the situations expressly listed in that statute. *See* S.Rep. No. 225, 98th Cong., 2d Sess. 150 [hereinafter "Senate Report"], *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3333. Thus, a defendant may appeal a refusal to depart only if the resulting sentence was arguably imposed "in violation of law" (and is therefore appealable under subsection 3742(a)(1)) or "as a result of an incorrect application of the guidelines" (and is therefore appealable under subsection 3742(a)(2)). Accordingly, I agree with the majority to the extent it holds that refusals to depart are unreviewable under some judicially-crafted abuse of discretion standard that operates *independently* of whether the refusal is either a violation of law or an incorrect application of the guidelines.

Refusals to depart, however, might also be reviewable under subsection 3742(a)(1) as possible violations of 18 U.S.C. § 3553, which contains two relevant subsections:

(a) Factors to be considered in imposing a sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2 of this subsection [namely punishment, deterrence, incapacitation, and rehabilitation].[8]

(b) Application of guidelines in imposing a sentence.—The court shall impose a sentence of the kind, and within the range, referred to in [the guidelines] unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

In a sufficiently extreme case, I believe that a refusal to depart from the applicable guideline range rises to the level of a violation of 18 U.S.C. § 3553(a). I base this conclusion in part on the expressly mandatory language of that provision, in part on well-settled administrative law principles imported into the sentencing context by *Mistretta v. United States*, —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), and

criminal sentences. Because of this general rule, we have held that section 1291 "is not generally available as a source of appellate jurisdiction over prosecutorial appeals of final orders." *Government of Virgin Islands v. Douglas,* 812 F.2d 822, 830 (3d Cir.1987). Because the SRA obviously contemplates that the government may, in some circumstances, appeal criminal sentences, *Douglas* implies that section 3742(b) must be read as conferring appellate jurisdiction. I can discern no reason to read the exactly parallel language of section 3742(a) any differently.

**8.** The full test of § 3553(a) is as follows:
Factors to be considered in imposing a sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B) to afford adequate deterrence to criminal conduct;
  (C) to protect the public from further crimes of the defendant; and
  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines that are issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(1) and that are in effect on the date the defendant is sentenced;
(5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

in part on the history, structure, and purpose of the SRA considered as a whole.

### A.

Section 3553(a) *requires*—as a matter of law—that district courts impose a sentence sufficient, but not greater than necessary, to meet the four purposes of sentencing set forth in subsection 3553(a)(2)—retribution, deterrence, incapacitation, and rehabilitation. Imposition of a sentence greater than necessary to meet those purposes is therefore a violation of section 3553(a) appealable under subsection 3742(a)(1) and reversible under subsection 3742(f)(1).[9] The question then becomes whether a sentence imposed pursuant to applicable guidelines could ever be greater than necessary to meet the four statutory purposes. I believe that it could.

A court must apply a statute passed by Congress itself as against an inconsistent regulation promulgated by a body to which Congress has delegated rulemaking power. Despite its formal location within the judicial branch, *see* 28 U.S.C. § 991(a), the Sentencing Commission functions just like any other independent agency to which Congress has delegated rulemaking power. *See Mistretta*, 109 S.Ct. at 665–66; *id.* at 680–82 (Scalia, J., dissenting). Also, the guidelines that the Sentencing Commission has promulgated are no different from rules and regulations promulgated by other independent agencies—at least in terms of the fundamental requirement that they be consistent with their organic statute (and, for that matter, with all other federal statutes).

In delegating the power to promulgate the guidelines, Congress required the Sentencing Commission to ensure that the guidelines be consistent with the four purposes of sentencing referred to in subsection 3553(a)(2). *See* 28 U.S.C. § 991(b)(1)(A).[10] Thus, a district court determining whether application of the guidelines in some particular case would violate section 3553(a) faces the same determination that the Sentencing Commission was required to make more generally under section 991(b)(1)(A): each must ensure that sentences imposed are sufficient, but not greater than necessary, to meet the four statutory purposes of sentencing.

In light of these parallel requirements, I read section 3553(a) as simply making explicit, in the context of guidelines sentencing, the unexceptional principle that a defendant in an enforcement proceeding may challenge the application of an administrative rule to his case on the ground that the rule exceeds the scope of the delegation authorizing promulgation of that rule. I concede that the substantive content of the requirements of section 991(b)(1)(A) and section 3553(a) are somewhat amorphous, given the generality at which the purposes of sentencing are stated. Nonetheless, I cannot conclude that application of some particular guidelines to some particular defendant could *never* result in violating the statutory requirement that sentences be no greater than necessary to satisfy the purposes of sentencing. To conclude otherwise would reduce section 991(b)(1)(A) to surplusage, and would undermine *Mistretta*'s view that that section contributes to the substantive limitations on the scope of the Commission's power that enable the SRA to pass muster under the nondelega-

---

**9.** Section 3742(f) provides:

If the court of appeals determines that the sentence—

(1) was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate;

(2) is outside the applicable guideline range and is unreasonable or was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable,

it shall state specific reasons for its conclusions and [remand for further sentencing proceedings];

(3) is not described in paragraph (1) or (2), it shall affirm the sentence.

**10.** 28 U.S.C. § 991(b) provides that "[t]he purposes of the United States Sentencing Commission are to—(1) establish sentencing policies and practices for the Federal criminal justice system that—(A) assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2) of title 18, United States Code."

tion doctrine. *See* 109 S.Ct. at 655–56.[11] Moreover, the amorphous nature of the criterion in section 3553(a) does not permit us to ignore the expressly mandatory language in that provision. *Cf. Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 2419, 96 L.Ed.2d 303 (1987) (finding that a statutory entitlement written in expressly mandatory language creates a constitutionally protected liberty interest even when the rights and duties it imposes are " 'defined by standards that reasonable men [and women] can interpret in different ways' " (citation omitted) (brackets in original)).

I do not suggest, however, that a sentencing court may freely override the judgment embodied in applicable guidelines about what sentences are sufficient to meet the statutory purposes of sentencing. Given the admitted indeterminacy of the statutory requirement, to so hold would seriously undermine Congress's desire to create a regime of basically determinate sentencing, *see, e.g., Mistretta,* 109 S.Ct. at 650–52, and its concomitant rejection of a proposal to make the guidelines nonbinding, *see* Senate Report at 79, 1984 U.S.Code Cong. & Admin.News at 3262. In administrative law generally, courts must defer to an agency's interpretation of its organic statute as long as it is not unreasonable. *See, e.g., Chevron U.S.A., Inc. v. Natural Resources Defense,* 467 U.S. 837, 842–46, 104 S.Ct. 2778, 2781–84, 81 L.Ed.2d 694 (1984). This is true especially where delegations actually *require* agencies (like the Sentencing Commission) to enact rules or guidelines to give content to very general statutory provisions (like the requirements of section 3553(a)).

Because of this well-settled general principle, and especially because of Congress's manifest desire to shift sentencing discretion from district judges to the Sentencing Commission, I reject the view that section 3553(a) requires departure *whenever* a sentencing judge disagrees with the determination embodied in applicable guidelines as to what sentencing range would sufficiently meet the purposes of sentencing. Such determinations are primarily for the Sentencing Commission, and the district courts must afford their guidelines great deference. At most, therefore, section 3553(a) requires departures only when a refusal to depart would result in a sentence plainly unreasonable in light of the statutory requirement that sentences imposed be sufficient, but not greater than necessary, to meet the four purposes of sentencing.

On its face, the first sentence of section 3553(a) creates an obligation to depart in appropriate circumstances. A complete analysis of when such an obligation exists, however, must take account of section 3553(b) as well. Section 3553(b) appears to trump section 3553(a), at least in significant part, because section 3553(a) requires a court to consider not only the statutory purposes of sentencing, but also the guideline ranges themselves. *See* 18 U.S.C. § 3553(a)(4) (quoted above in note 8). Moreover, section 3553(b) provides that the sentencing court is *prohibited* from departing unless it finds aggravating or mitigating circumstances not adequately taken into account by the Commission in formulating the guidelines. When such circumstances are present and become sufficiently compelling, however, one might argue that section 3553(b) itself requires departures, a possibility I now consider.

### B.

The obvious difficulty with the suggestion that a refusal to depart could violate section 3553(b) is that that section on its

---

11. The Eighth Circuit agrees. *See United States v. Lee,* 887 F.2d 888 (8th Cir.1989) (striking down an application of Guidelines § 2J1.6 as inconsistent with 28 U.S.C. § 991(b)(1) and 28 U.S.C. § 994(c)). Because of the parallel requirements of 28 U.S.C. § 991(b)(1) and 18 U.S.C. § 3553(a), there is obvious similarity between the Eighth Circuit's view that application of a guideline is sometimes inconsistent with

section 991(b)(1) and my view that section 3553(a) sometimes requires courts to depart from the guidelines. Thus *Lee* provides some support for my position, and seems irreconcilable with *Colon* and *Franz.* As explained below, however, I ultimately rely in part, but not exclusively, on the administrative law analogy suggested by sections 991(b)(1)(A) and 3553(a).

face sometimes permits, but never seems to require, departures.

The legislative history on whether section 3553(b) ever requires departures is ambiguous. The general discussion of "Assuring Fairness in Sentencing" contains one paragraph suggesting that a district court has unbounded discretion to refuse to depart:

> The bill requires the judge, before imposing sentence, to consider the history and characteristics of the offender, the nature and circumstances of the offense, and the purposes of sentencing. He is then to determine which sentencing guidelines and policy statements apply to the case. Either he *may* decide that the guideline recommendation appropriately reflects the offense and offender characteristics and impose sentence according to the guideline recommendation or he *may* conclude that the guidelines fail to reflect adequately a pertinent aggravating or mitigating circumstance and impose sentence outside the guidelines. A sentence *outside* the guidelines is appealable, with the appellate court directed to determine whether the sentence is reasonable. Thus, the bill seeks to assure that most cases will result in sentences within the guideline range and that sentences outside the guidelines will be imposed only in appropriate cases.

Senate Report at 52, 1984 U.S.Code Cong. & Admin.News at 3235 (emphases added) (footnotes omitted). The very next paragraph, however, strongly suggests exactly the opposite:

> The Committee does not intend that the guidelines be imposed in a mechanistic fashion. It believes that the sentencing judge has an *obligation* to consider all the relevant factors in a case and to impose a sentence outside the guidelines in an appropriate case.

*Id.* (emphasis added).

The legislative history specifically discussing section 3553(b) lends support to the discretionary view.

> [Section 3553(b)] recognizes, however, that even though the judge finds an aggravating or mitigating circumstance in

the case that was not adequately considered in the formulation of guidelines, the judge might conclude that the circumstance does not justify a sentence outside the guidelines. Instead, he might conclude that a sentence at the upper end of the range in the guidelines for an aggravating circumstance, or at the lower end of the range for a mitigating circumstance, was more appropriate or that the circumstance should not affect the sentence at all.

Senate Report at 79, 1984 U.S.Code Cong. & Admin.News at 3262.

The argument that a refusal to depart is in some cases an incorrect application of the guidelines' departure provisions raises exactly the same issue as the argument under section 3553(b)—whether to infer an obligation to depart from language that on its face appears merely permissive. The guidelines, like section 3553(b) itself, can plausibly be read to suggest that departures are sometimes permitted, but never required.

The general provision governing departures provides as follows:

> Circumstances that may warrant departure from the guidelines pursuant to [section 3553(b)] cannot, by their very nature, be comprehensively listed and analyzed in advance. The controlling decision as to whether and to what extent departure is warranted can only be made by the court at the time of sentencing. Nonetheless, the present section seeks to aid the court by identifying some of the factors that the Commission has not been able to fully take into account.... Presence of any such factor *may* warrant departure from the guidelines, under some circumstances, *in the discretion of the sentencing judge*. Similarly, the court *may* depart from the guidelines, even though the reason for departure is listed elsewhere in the guidelines ... if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.

Guidelines § 5K2.0 (emphases added).

The guidelines endorse departures when a defendant's criminal history category

does "not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." *Id.* § 4A1.3. In these circumstances as well, however, departures appear to be authorized, but not required: "the court *may* consider imposing a sentence departing from the otherwise applicable guideline range." *See id.* (emphasis added).

Finally, the relevant introductory comments to the guidelines are couched in similar terms:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court *may* consider whether a departure is warranted.

*Id.* § Ch. 1, Part A, Introduction 4(b) (emphasis added).

The government argues that under both section 3553(b) and the guidelines, departures are often prohibited, sometimes allowed, but never required. Thus, it concludes that failures to depart can never amount to a violation of section 3553(b), or to an incorrect application of the guidelines. Admittedly, these particular provisions are written in permissive terms. That fact alone, however, cannot be conclusive because we often impose limits on the discretion granted to district courts by statutes phrased in terms that are permissive, but not mandatory. Consequently, we often review refusals to exercise such discretion for abuse.[12]

Nonetheless, the case for appellate review is arguably weak in this context, in light of Congress's desire that the guidelines usually be followed. Were we construing section 3553(b) and isolated departure provisions in a vacuum, I might well be inclined to adopt the government's position that refusals to depart are not appealable. We must construe not only section 3553(b), however, but also section 3553(a), and we must construe both these provisions in light of each other and in light of the SRA considered as a whole. A complete account of why I ultimately reject the government's position thus requires me to take a broader focus.

### C.

I believe that the question when, if ever, departures are required is better answered by examining the overall purpose and structure of the SRA and the guidelines, not by comparing the number of "mays" to the number of "musts" in isolated provisions and snippets of legislative history. As the Supreme Court has repeatedly stated, " ' " ' " "[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." ' " ' " *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987) (quoting *Kelly v. Robinson*, 479 U.S. 36, 43, 107 S.Ct. 353, 357–58, 93 L.Ed.2d 216 (1986) (quoting *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 221, 106 S.Ct. 2485, 2493–94, 91 L.Ed.2d 174 (1986) (quoting *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 285, 76 S.Ct. 349, 359, 100 L.Ed. 309 (1956) (quoting *United States v. Heirs of Boisdore*, 49 U.S. (8 How.) 113, 122, 12 L.Ed. 1009 (1849)))))).

The overarching goal of sentencing reform was to reduce the "astounding" and "unjustifiably wide" range of sentences imposed on similarly situated defendants sentenced by different federal judges. *See* Senate Report at 38, 41, 1984 U.S.Code Cong. & Admin.News at 3221, 3224; *see also id.* at 65, 1984 U.S.Code Cong. & Admin.News at 3248 ("The shameful disparity in criminal sentences is a major flaw in the existing criminal justice system, and makes

---

12. For example, 42 U.S.C. § 1988 provides that in civil rights cases "the court, in its discretion, *may* allow the prevailing party, other than the United States, a reasonable attorney's fee" (emphasis added). Section 1988 is written in purely permissive language, but we routinely review district courts' refusals to grant full attorneys' fees for abuse. *See, e.g., Northeast Women's Center v. McMonagle*, 889 F.2d 466 (3d Cir. 1989).

it clear that the system is ripe for reform."); *id.* at 52, 1984 U.S.Code Cong. & Admin.News at 3235 (declaring the elimination of such disparity to be "[a] primary goal of sentencing reform"). Disparate sentencing was made possible because individual sentencing judges, before passage of the SRA, had virtually absolute discretion to sentence anywhere within extremely broad ranges prescribed by statute. *See, e.g., United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591–92, 30 L.Ed.2d 592 (1972) (stating that sentences imposed within statutory limits are not subject to appellate review).[13]

The SRA responded to this problem by seeking to alter fundamentally the institutional responsibility for and decisionmaking procedures of federal sentencing. It replaced a system under which most sentencing policy, to the extent it existed, was established by individual judges in case-by-case adjudications with one in which most sentencing policy is established by a commission charged with promulgating generally applicable, prospectively prescribed sentencing ranges narrow enough to confine the discretion of individual judges within acceptable limits.

Congress realized, however, that any attempt to codify, essentially from scratch, an area as complex as federal sentencing inevitably would produce imperfect rules, the unyielding application of which would— in circumstances unforeseen by their framers—sometimes result in inappropriately harsh or lenient sentences. Congress did

not simply seek to replace the unfairness of disparity—different judges treating like cases differently—with the unfairness of imperfectly tailored rules, which would force judges to treat unlike cases similarly whenever they happened to fall under the same rule or guideline. Thus, although Congress created the Sentencing Commission primarily to constrain the discretion of individual judges, it also required the Commission "to permit individualized sentences when warranted by aggravating or mitigating factors not taken into account in the establishment of general sentencing practices," 28 U.S.C. § 991(b)(1)(B), expressly authorized individual judges to depart from the guidelines in precisely those circumstances, *see* 18 U.S.C. § 3553(b), and stated that it "does not intend that the guidelines be imposed in a mechanistic fashion," Senate Report at 52, 1984 U.S.Code Cong. & Admin.News at 3235.

Simply codifying a first-draft version of the guidelines that provided for departures whenever the guidelines proved inadequate could not possibly solve the problems Congress had identified, however. To the extent that Congress (or the Commission) constrained departure powers in advance, judges would be forced to follow guidelines in situations where the resulting sentences would be inappropriate; on the other hand, to the extent that departure powers were unconstrained, individual judges would be reinvested with the discretion that had created the problem of disparity in the first place. The ultimate success of the quite

---

**13.** The other major cause of disparity and uncertainty in federal sentencing was the power of the Federal Parole Commission to set early release dates according to when it believed individual prisoners had been sufficiently rehabilitated. *See generally* Senate Report at 46–49, 1984 U.S.Code Cong. & Admin.News at 3229–32. The discretion afforded both judges and parole commissioners to individualize sentences was necessitated by the penological notion that rehabilitation should be the major purpose of incarceration. *See, e.g., United States v. Grayson,* 438 U.S. 41, 45–48, 98 S.Ct. 2610, 2613–14, 57 L.Ed.2d 582 (1978); *Williams v. New York,* 337 U.S. 241, 247–48, 69 S.Ct. 1079, 1083–84, 93 L.Ed. 1337 (1949). In the SRA, Congress largely, although not entirely, rejected this "outmoded rehabilitation model." Senate Report at 38, 1984 U.S.Code Cong. & Admin.News at 3221.

*Compare, e.g., id.* ("[A]lmost everyone involved in the criminal justice system now doubts that rehabilitation can be induced reliably in a prison setting, and it is now quite certain that no one can really detect whether or when a prisoner is rehabilitated.") *with* 18 U.S.C. § 3553(a)(2)(D) (listing as one of four purposes of sentencing "the need for the sentence imposed ... to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment"). With this decreased emphasis on rehabilitation, unwanted disparity came to be seen more as a remediable defect than as a necessary evil. Thus the SRA overhauled not only federal sentencing, but also the federal parole system. *See generally* Senate Report at 56–58, 1984 U.S.Code Cong. & Admin.News at 3239–42.

ambitious project undertaken in the SRA thus depends on the Commission's ability to refine the initial guidelines as their imperfections become apparent through experience. Otherwise, we would be left forever with broad discretion to depart, or mandatory but imprecise rules, or some combination of the two.

Congress clearly recognized this point. It created the Sentencing Commission as a permanently existing body, *see* 28 U.S.C. §§ 991–992, charged not merely with developing an initial set of sentencing practices, *see id.* § 991(b)(1), but also with monitoring and evaluating those practices on an ongoing basis, *see id.* § 991(b)(2). Thus the Commission is required to review the guidelines periodically, *see id.* § 994(*o*), and empowered to submit amendments to the guidelines to Congress, *see id.* § 994(p). Only through this process of continually amending and refining the guidelines as their imperfections become apparent from experience can the alternative problems arising from broad departure power versus mandating enforcement of imperfect rules be combatted simultaneously.

The Sentencing Commission also recognized the unavoidable imperfection in its initial set of guidelines, and the resulting need for their continuing evolution. More specifically, the Commission understood the nature and extent of its power to prohibit departures by declaring in advance that it had considered various factors and found them irrelevant for sentencing purposes. *See* 18 U.S.C. § 3553(b); 28 U.S.C. §§ 994(c), 994(d). The Commission chose not to exercise this power, however, in large part because of

> the difficulty of foreseeing and capturing a single set of guidelines that encompasses the vast range of human conduct potentially relevant to a sentencing decision. The Commission also recognizes that in the initial set of guidelines it need not do so. The Commission is a permanent body, empowered by law to write and rewrite guidelines, with progressive changes, over many years. *By monitoring when courts depart from the guide-*

> *lines and by analyzing their stated reasons for doing so,* the Commission, over time, will be able to create more accurate guidelines that specify precisely where departures should and should not be permitted.

Guidelines Ch. 1, Part A, Introduction 4(b) (emphasis added).

Given this background, it becomes evident that departures play an absolutely critical role in the ongoing process begun by the SRA. Quite simply, departures provide the Commission with the feedback it needs to refine the guidelines over time. Without departures—which flag for the Commission specific cases or controversies where "a particular guideline linguistically applies but where conduct significantly differs from the norm," [14]—the Commission would be significantly hampered in its ongoing mission to develop an ever-improving code of federal sentencing. Because the fulfillment of this central purpose of the SRA clearly (if paradoxically) depends on departures, especially at a stage when everyone concedes that the guidelines still contain significant room for improvement, I conclude that the notion of a legally required departure is perfectly consistent with the purposes that underlie, and the spirit that animates, the SRA itself. More specifically, in cases that fall far enough outside the "heartland," *see supra* at 276, a district court's refusal to depart cannot be squared with the overall sentencing scheme envisioned by Congress when it enacted the SRA.

In such cases, both section 3553(b) and the guidelines themselves clearly permit departure, and thus cannot undermine the conclusion that section 3553(a) might require departure. Moreover, despite the requirement of section 991(b)(1)(B), the existence of applicable guidelines does not necessarily represent the Sentencing Commission's expert judgment about what sentence would sufficiently meet the statutory purposes of sentencing in some particular case, because the Commission itself has clearly expressed its inability to foresee and account for many appropriate sentenc-

---

**14.** Guidelines Ch. 1, Part A, Introduction 4(b).

ing factors in drafting the guidelines. Finally, a stubborn or unjustified refusal to depart in such cases would be just as inconsistent with the spirit of the SRA as it is with the letter of section 3553(a).

### D.

Permitting appellate review under such circumstances is fully consistent with section 3742 because a refusal to depart in a sufficiently egregious case can fairly be characterized as a violation of 18 U.S.C. § 3553(a). Judge Winter, however, argues that the statutory purposes of sentencing enumerated in section 3553(a) are so general that interpreting section 3553(a) as a "law" the "violation" of which is appealable under subsection 3742(a)(1) "would make every sentence appealable on grounds amounting to a claim of unreasonableness, thus rendering Subsections (a)(2), (a)(3) and (a)(4) superfluous." *Colon*, 884 F.2d at 1553. I disagree. Subsection 3742(a)(2), for example, authorizes appeals for sentences imposed as a result of an incorrect application of the guidelines, and section 3742(f) provides in effect that sentences within applicable guideline ranges must be affirmed if and only if they were not imposed in violation of law or as a result of an incorrect application of the guidelines.[15]

Imagine a case of kidnapping that involves a first-time offender, release of the victim before twenty-four hours have elapsed, and no other special offense characteristics or strongly mitigating factors. The sentence authorized by statute ranges from one day to life. *See* 18 U.S.C. § 1201. Imagine further that in applying the guidelines, the district court erroneously concludes that the kidnapper used a dangerous weapon, and therefore believes that the appropriate sentencing range is 57 to 71 months, when the correct range is 46 to 57 months. *See* Guidelines § 2A4.1, Ch. 5, Part A. The district court imposes a 60–month sentence. Under my view, the sentence imposed in this hypothetical would not even approach rising to the level of a violation of section 3553(a) appealable un-

der subsection 3742(a)(1) and reversible under subsection 3742(f)(1). Nonetheless, the kidnapper's sentence obviously would be appealable under subsection 3742(a)(2) and reversible under subsection 3742(f)(1). Thus, my view that refusals to depart are appealable under subsection 3742(a)(1) as possible violations of section 3553(a) does not reduce the rest of section 3742 to surplusage.

A closely related criticism is that my view would allow "every defendant sentenced under the guidelines [to] create an issue for appeal merely by requesting a departure." *Franz*, 886 F.2d at 979. This argument presupposes that when Congress created a "limited" practice of appellate review, Senate Report at 149, 1984 U.S. Code Cong. & Admin.News at 3332, it intended that "not all sentences are to be appealable," *Franz*, 886 F.2d at 978. The difficulty with this criticism is that even under *Colon*'s and *Franz*'s interpretation of section 3553(a), the defendant in *any* guidelines case can, if he desires, raise claims that we must review on appeal. For example, instead of arguing that his sentence violated section 3553(a), a defendant could argue that his sentence violated the eighth amendment proportionality requirement, *see Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), or that the court's statement of reasons was inadequate, *see* 18 U.S.C. § 3553(c), or that the particular guidelines followed were incorrectly applied. Such claims are all clearly reviewable under section 3742. Thus, it is misleading to say that appellate review is "limited" in the sense that not all sentences are appealable. As section 3742 currently stands, it is "limited" only in the weaker sense that the kinds of claims that are always available turn out usually to be frivolous (and thus not worth pursuing on appeal). My interpretation of section 3553(a), which would require departure only in the exceedingly rare cases when a sentence within an applicable guideline range would be plainly unreasonable in light of the statutory criteria listed section

---

15. *See supra* note 9.

3553(a),[16] would leave the breadth of section 3742 undisturbed in this respect.

Permitting review of refusals to depart for possible violations of section 3553(a) furthers a very important purpose underlying the SRA: it helps provide the flexibility at the margins that is essential to effect Congress's desire to fashion a sentencing scheme that is just, as well as non-disparate and efficient.[17] Judge Winter, however, asserts that "[t]he very nature of the sentencing reform enterprise was to establish national standards narrowing the discretion of sentencing judges so as to attain a degree of uniformity." *Colon*, 884 F.2d at 1555. I agree that achieving uniformity was a very important, probably the most important, purpose of the SRA. However, Congress also intended to "maintain[ ] sufficient flexibility to permit individualized sentences when warranted." 28 U.S.C. § 991(b)(1)(B). Some such flexibility is necessary not only to do justice in individual cases, but also to achieve the very uniformity that Judge Winter properly focuses upon. "[I]f a judge departs in a case where most would not, unwarranted disparity results. However, unwarranted disparity also results if a judge refuses to depart in a situation where most courts would. Just as reversing the judge who improperly departs reduces unwarranted disparity, so too does correcting the judge who fails to depart when the facts of a case clearly call for a departure." Yellen, 1 Fed. Sentencing Rep. at 264.[18]

**E.**

I would conclude that only when a refusal to depart would result in a sentence plainly unreasonable in light of the various statutory considerations listed in section 3553(a) does departure become the obligation of the district court. Departures were clearly intended to be the exception, not the rule, even under the initial set of guidelines. *See, e.g.*, Senate Report at 52, 1984 U.S.Code Cong. & Admin.News at 3235 ("[T]he [SRA] seeks to assure that most cases will result in sentences within the guideline range. . . ."); Guidelines Ch. 1, Part A, Introduction 4(b) ("[T]he Commission believes that despite the courts' legal freedom to depart from the guidelines, they will not do so very often."). As noted above,[19] this goal would be jeopardized if sentencing judges were required (or even allowed) to depart based on *de novo* determinations of what sentences are minimally sufficient to meet the statutory purposes of sentencing.

Despite the Sentencing Commission's concededly imperfect foresight, the guidelines represent the considered judgment of a responsible, expert agency charged with ensuring that sentences satisfy the statutory requirement in section 3553(a). Thus, it will be exceedingly rare that a case falls so far outside the heartland that application of the guidelines would result in a sentence plainly unreasonable in light of a

**16.** *See supra* at 274–75; *infra* at 281–82.

**17.** As to efficiency, I find nothing in the SRA suggesting that the appealability of refusals to depart should depend on considerations like the backlog of appellate court dockets. Nonetheless, I note my skepticism that reviewing failures to depart for consistency with section 3553(a) would appreciably burden this court. First of all, I am confident that in most cases, such appeals would be frivolous. Secondly, the party claiming error will almost always be able to raise various other claims cognizable on appeal, thus making the marginal effort necessary to evaluate one additional claim quite small. Such claims might involve not just sentencing issues but also issues bearing on the underlying conviction (for example, appellant's sixth amendment claim in this case). Finally, should we ever become deluged with frivolous sentencing appeals, we could adopt appropriate summary procedures for disposing of such cases at that time. *Cf. United States v. Ruiz–Garcia*, 886 F.2d 474 (1st Cir.1989) (providing for summary affirmances of unfounded sentencing appeals).

**18.** Judge Winter's approach, in some cases, renders the courts of appeals powerless to redress even intracircuit disparity. Suppose for example that we review and affirm a downward departure appealed by the government. In a later case presenting identical circumstances, a different district judge refuses to depart downward. Despite the creation of obviously unwanted disparity, we would be powerless under *the circumstances to ensure the evenhanded* application of law within our own Circuit, regardless of how compelling is the case for departure under the fact pattern of the two cases.

**19.** *See supra* at 274–75.

very general statutory criterion susceptible of many competing reasonable interpretations. The precise circumstances under which following the guidelines would result in a sentence sufficiently unreasonable to trigger a violation of section 3553(a) is a context-specific question that I would decline to address in detail at this time, when our accreted stock of concrete examples consists only of a few cases of early impression. I would therefore decline to lay down any overarching principles today, except to note that the set of cases in which departures are required is obviously a narrow subset of the narrow set of cases in which they are even permitted.[20]

The question whether section 3553(a) requires departure in some particular case seems to me a question of law, on which we owe no particular deference to the district court's conclusion. *Cf. United States v. Ryan*, 866 F.2d 604, 610 (3d Cir.1989) (holding that the question whether section 3553(b) permits departure in some particular case is subject to plenary review). However, to the extent that the district court itself must defer in the first instance to the judgment embodied in applicable guidelines, we must defer likewise. Accordingly, I would reverse refusals to depart challenged as violations of section 3553(a) only if application of the guidelines in the particular case results in a sentence plainly unreasonable in light of the statutory requirement.

### F.

Whenever a sentence is challenged on appeal under a law that could, under some set of facts, be violated at sentencing, we *affirm* the sentence if we find that, on the facts before us, no law has been violated. Thus, for example, the court in *United States v. Sciarrino*, 884 F.2d 95 (3d Cir. 1989), reviewed each argument advanced by the defendant that laws had been violated or guidelines had been incorrectly applied, rejected each of them, and then affirmed. Section 3742(a), however, seems to require that we should *dismiss* such an appeal, having concluded that the sentence was lawfully imposed under correctly applied sentencing guidelines. We have eschewed such a literal reading of section 3742(a), which would, in this context, make our jurisdictional inquiry coextensive with our inquiry on the merits.[21] Strictly speaking, therefore, the majority's apparent holding that discretionary refusals to depart challenged under section 3553(a) must be dismissed[22] is justified only by its conclusion that that law could *never* be violated by a refusal to depart, not by the weaker conclusion that section 3553(a) was not violated *in this case*.

Because I believe that section 3553(a) could be violated by a refusal to depart on some sets of facts, I would affirm a district court's discretionary refusal to depart on facts where we ultimately conclude that no violation has occurred. Assuming that the majority is correct that this case involves a discretionary refusal to depart and assum-

---

**20.** I do note, however, that concrete examples can easily be constructed to support my view that some such cases exist. Imagine, for example, a person who is twice convicted at age 18 in municipal court for selling small amounts of marijuana to his friends—misdemeanor offenses under applicable state law for which he receives two short terms of probation. Imagine further that this person then becomes a productive, law-abiding citizen. Thirty years later, however, he again sells a small amount of marijuana. He is apprehended and convicted, this time in federal court. Because the career offender provision is applicable, *see* Guidelines § 4B1.1, he faces a guideline sentencing range of 30 years to life. The question then becomes whether a 30-year sentence can be said to be "not greater than necessary" to ensure adequate punishment, deterrence, incapacitation, and re-

habilitation under these circumstances. I believe that the 30-year sentence would obviously violate section 3553(a), even under the "plainly unreasonable" standard that I deem necessary to trigger the obligation to depart. Admittedly this hypothetical presents an extreme and rare example, but I believe that departures become mandatory only in extreme and rare situations.

**21.** *Compare* 18 U.S.C. § 3742(a) (appealability) (quoted above at page 6) *with id.* § 3742(f) (disposition on the merits) (quoted above in note 9).

**22.** The defendant in this case has not cited section 3553(a) as a "law" arguably violated by the district court's refusal to depart. Nonetheless, I assume that the majority's citation of *Colon* and *Franz* is intended to foreclose the possibility that this court would review such a claim.

ing further that section 3553(a) was not violated on these facts, I believe that the proper disposition would be to affirm the sentence, not to dismiss the appeal.

### G.

Because I believe that a refusal to depart could, in a sufficiently extreme case, violate section 3553(a), I would evaluate discretionary refusals to depart by considering the record in each particular case. Because this case does not, in fact, involve a discretionary refusal to depart, *see supra* Part I, I need not do so here, however. The district court's erroneous view that section 3553(b) prohibited departure is sufficient ground, in and of itself, to justify resentencing. *See United States v. Cheape*, 889 F.2d at 479–81.