**STATE OF NEW JERSEY, DEPART-MENT OF HUMAN SERVICES, Plaintiff–Appellant,**

v.

**SECRETARY OF the UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant–Respondent.**

**Civ. No. 89–4923 (CSF).**

United States District Court, D. New Jersey.

Oct. 19, 1990.

Robert J. Del Tufo, Atty. Gen. of N.J. by Eileen C. Stokley, Deputy Atty. Gen., Trenton, N.J., for plaintiff.

Michael Chertoff, U.S. Atty. by Anthony J. LaBruna, Asst. U.S. Atty., Newark, N.J., for defendant.

## OPINION

CLARKSON S. FISHER, District Judge.

Plaintiff-appellant, State of New Jersey, Department of Human Services (hereinafter "State"), appeals from two final decisions of the Departmental Appeals Board (Board), acting on behalf of the defendant-respondent, Secretary of Health and Human Services (hereinafter "Secretary"), which sustained a disallowance of federal funds for costs claimed by the State under Title XIX of the Social Security Act.[1] The costs were incurred by the State in the administration of its computerized Medicaid Management Information System (MMIS) and were partially disallowed following a Health Care Financing Administration (the HCFA) review of the State's claims for federal financial participation (FFP).

The State seeks a declaration of its right to the federal funds pursuant to federal statute, 42 U.S.C. § 1396b, and seeks an injunction precluding the Secretary from enforcing a policy which reduces the matching federal funds for particular State MMIS expenditures. The Secretary cross-moves for summary judgment dismissing the State's complaint. For the reasons set forth below, the State's motion will be de-

---

1. Although only decision No. 1071 is referred to within, the State also appeals from decision No. 1122, rendered January 12, 1990, after the appeal of No. 1071 was taken to this court. Decision No. 1122 relied on No. 1071 in disallowing $47,175 FFP for the same type of costs as were disallowed in No. 1071, but for the period October 1, 1987, through March 31, 1989. *See* Amended Complaint.

nied, and the Secretary's motion will be granted.

## Introduction

The Medicaid program, enacted in 1965 as Title XIX of the Social Security Act, is a nationwide, state-administered medical assistance program. States wishing to participate in the program must submit a comprehensive plan conforming to certain statutory requirements. *See* 42 U.S.C. §§ 1396 *et seq.* (1990). The state plan must be approved by the Secretary. Upon implementation of the plan, the Medicaid program enables the participating state to assist individuals who cannot meet the costs of necessary medical care. The federal government, in turn, partially reimburses the state for providing the Medicaid services and for administering the program.

In 1972, Congress amended Title XIX to provide federal reimbursement of up to 90% of the state's expenditures which were attributable to the design, development, and installation of mechanized (computerized) Medicaid claims processing and information retrieval systems. Federal reimbursement of at least 50% was provided for costs associated with the efficient operation of such systems; enhanced reimbursement (75% or 90%) was provided when prescribed by statute. *See* 42 U.S.C. § 1396b(a)(2) through (7). The regulations implementing the above provisions are codified in Section 433(c) of 42 C.F.R.

The regulations set forth at 42 C.F.R. Sections 433.112(a) and 433.116(a) mirror the aforesaid statutory language, providing 90% FFP for design, development, and installation of MMIS systems, and up to 75% for operation of the MMIS. Other regulations more specifically outline the expenditures for which enhanced reimbursement is awarded. For example, with respect to staffing, the FFP rate for personnel "engaged *directly* in the operation" of an MMIS is 75%. 42 C.F.R. § 432.50(b)(2) (1989) (emphasis added). When an individual works in an area for which enhanced reimbursement has not been authorized, however, the state is reimbursed at only 50% FFP. All miscellaneous activities necessary for the proper and efficient adminis-

tration of the state program receive 50% FFP. 42 C.F.R. § 433.15(7) (1989).

A review of the evolution of the HCFA's rules with respect to the above provisions, though lengthy, is required. The HCFA first identified the types of costs "directly attributable" to the operation of an MMIS, and hence qualified for enhanced FFP, in June 1974, in Part 7 of the Medical Assistance Manual. (Tr. 87). In April 1978, the HCFA issued Action Transmittal HCFA–AT–78–33 to clarify the applicability of 90% and 75% FFP to MMIS costs other than salary, travel, training and other compensation. (Tr. 89). In that transmittal, the HCFA stated that "all costs—direct and indirect—benefiting the operation of an approved MMIS are reimbursable at the 75% Federal matching rate." (Tr. 89).

In July 1981, the HCFA superseded, *in toto*, the Medical Assistance Manual and, among other things, transmittal HCFA–AT–78–33. In its place, the HCFA issued Part 11 of the State Medicaid Manual (SSM), entitled "Medicaid Management Information System (MMIS)." (Tr. 91). Section 11275.21 of the manual provides that "FFP at either 90% or 75% may be paid only for those functions that are attributable to an MMIS." (Tr. 95).

In February 1982, the SSM was revised in an effort to "clarify" previous policy. (Tr. 98). In so doing, the HCFA added section 11275.26, entitled List of Reimbursable Costs for State Systems. This section stated that "the higher FFP will be granted for costs that are *directly* incurred by the approved MMIS." (Tr. 99) (emphasis added). Further, section 11275.26 stated that the only *indirect* costs eligible for the higher FFP are those "directly attributable to the MMIS." *Id.* Indeed, "[i]ndirect costs [which are] not directly attributable to the MMIS cost center, such as personnel, finance, etc., will be funded at 50 percent." *Id.* Finally, the section stated that "[a]nything that is not on this list as being eligible for the higher match will only be funded at the normal [50% FFP] match." *Id.*

In July 1986, the HCFA again revised Part 11 in an attempt to "clarify funding policy" with respect to MMIS-related activi-

ties. (Tr. 102). The 1986 revisions, whose cover page bore the heading "New Policy— Effective Date: July 31, 1986," added several new sections in an attempt to further refine the HCFA's position as to which costs received normal federal matching funds, and which costs received enhanced FFP. (Tr. 101–23). In that regard, the HCFA Section 11275.26 was renumbered section 11275.32 and provided a table which itemized the various costs associated with the design, implementation, operation and administration of an MMIS and listed the corresponding FFP for each cost. (Tr. 110–22).

Section 11275.32 states that the only indirect costs which will be funded at the higher FFP are those "directly attributable to the MMIS." Further, section 11275.30 provides that "[o]verhead costs not directly resulting from the MMIS cost center are reimbursed at the 50–percent FFP rate." (Tr. 108). These modifications serve as the backdrop for the present appeal.

### Prior History

On September 26, 1988, the HCFA informed the State that it was disallowing $71,014 FFP for indirect administrative costs for the period July 1, 1986, through September 30, 1987. (Tr. 19). The HCFA found that the disallowed indirect costs had been claimed at the enhanced 75% FFP rate reserved for direct costs incurred in operating an MMIS. *Id.* The HCFA concluded that the indirect costs should have been claimed at the normal (50%) FFP reserved for indirect overhead costs. *Id.* This decision was affirmed in part by the Departmental Appeals Board (Board) on July 19, 1989. (Tr. 2). The Board, in Decision No. 1071, upheld the disallowance of $64,028 FFP for statewide and department-wide overhead costs, but reversed on the disallowance of $6,986 FFP claimed at the enhanced 75% FFP for training. (Tr. 6–14). The Board's disallowance was based on an earlier decision, *New York Dep't of Soc. Serv.*, DAB No. 1023 (1989), which disal-

lowed certain indirect costs at the enhanced rate for operation of New York's MMIS.

In No. 1023, the Board found that the HCFA's policy to limit the enhanced 75% FFP rate to direct operating costs and indirect costs directly attributable to the operation of an MMIS was a permissible interpretation of the statute and regulations. (Tr. 2). In so doing, the Board distinguished *New Jersey Dep't of Human Serv.*, DAB No. 648 (1982), a decision in which it held that the HCFA's attempt to divide costs into directly and indirectly attributable costs was not valid because of the HCFA's long-standing policy to reimburse statewide and department-wide indirect MMIS costs at 75% FFP. (Tr. 5). Decision No. 648 was not controlling, the Board asserted, because the HCFA direct-indirect policy had not been clearly expressed at the time No. 648 was decided.[2] (Tr. 6). Following decision No. 648, however, that policy was expressed in the July, 1986 revision of the State Medicaid Manual. (Tr. 5–6). The Board in No. 1023 (the New York matter) found that this "new policy" did not contravene the plain meaning of the Act, 42 U.S.C. § 1396b, which provided only a general standard that costs which are "attributable to the operation of MMIS systems" receive 75% FFP. (Tr. 6). The Board further found that the 1986 revision to Part 11 merely established a guide to determine which indirect costs were "attributable" to MMIS operation and hence received enhanced FFP. (Tr. 6).

In the instant matter, the Board upheld the disallowance on the basis of the reasoning in the New York matter, decision No. 1023. (Tr. 15). The Board concluded that the indirect administrative costs requested by the State at 75% FFP were entitled to reimbursement at only 50% FFP; therefore, the HCFA properly disallowed $64,028 in FFP for statewide and department-wide overhead costs not directly attributable to the operation of the MMIS. The State appealed the decision to this court.

---

**2.** Indeed, upon reconsideration of its decision, the Board noted that the issue "was not whether the [HCFA] was precluded from stating such a distinction, but whether the [HCFA] had, in fact, stated such a distinction." (Tr. 4). At that time, it had not.

This court has jurisdiction over the subject matter pursuant to *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), in which the Supreme Court held that the federal district courts have jurisdiction to review final administrative decisions on disallowances.

## Standard of Review

This court has the authority to "hold unlawful and set aside agency action" which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Further, there is a well-settled principle that, when reviewing agency statutory interpretations, the courts shall defer to the agency's interpretation as long as it is not unreasonable. *U.S. v. Denardi*, 892 F.2d 269, 277 (3d Cir.1989) (relying on *Chevron, U.S.A. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). This court may not impose its own construction of the statute in lieu of a reasonable interpretation by an agency's administrator. *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782.

## Discussion

The State raises several arguments in support of its motion for summary judgment. The court has found no binding authority, and there is a dearth of case law on this subject. There is no genuine issue of fact which would preclude granting a motion for summary judgment. Because this court finds the HCFA policy does not contravene 42 U.S.C. § 1396b, and because the policy is a reasonable interpretation of the statute, this court affirms the decision of the Department Appeals Board in decisions Nos. 1071 and 1122. The State's motion for summary judgment is denied. HHS's cross-motion for summary judgment is granted.

## I

■ The State first argues that the HCFA policy to provide enhanced FFP for only those costs directly attributable to MMIS operation, whether or not those costs are "direct" charges or "indirect" charges, contravenes the intent and policy of the Social Security Act, and specifically the Medicaid program.

Title 42 U.S.C. § 1396 *et seq.* was enacted to enable each participating state to furnish medical and rehabilitation services to those qualifying individuals who cannot afford the costs of those services. 42 U.S.C. § 1396 (1990). The federal government reimburses states in varying percentages (50, 75, 90%), depending on how the costs were incurred. *See* 42 U.S.C. § 1396b(a)(2) through (7). Unless enhanced reimbursement is statutorily mandated, the State gets reimbursed for 50% of its costs. *See* § 1396b(a)(7) (50% FFP for costs incurred for the proper and efficient administration of the State plan). Enhanced FFP is provided for: skilled medical personnel and their direct supporting staff (§ 1396b(a)(2)); design, development, and installation of MMIS systems (§ 1396b(a)(3)(A)); costs attributable to the operation of MMIS systems (§ 1396b(a)(3)(B)); and other services. *See* § 1396b(a)(3)(C) through § 1396b(a)(7). Thus, the federal government reimburses the participating state for a minimum of 50% of the costs incurred for providing medical and rehabilitation services to qualified individuals, and 75–90% FFP for development and operation of MMIS systems. The HCFA policy promulgated in the State Medicaid Manual does not contravene this reimbursement scheme and, therefore, fulfills the intent of the Medicaid program to assist the State in providing medical assistance.

## II

■ The State next argues that the HCFA policy contravenes principles enumerated in the Office of Management and Budget's directive OMB A–87 and deprives the State of its statutory entitlement. The State takes particular exception to the HCFA terminology describing the costs which are reimbursed by the HCFA at certain FFP rates. Specifically, the State argues that there is no cost description such as an "indirect cost directly attributable" to a cost objective (MMIS) in OMB A–87. The court finds the State's position unpersuasive.

First, "the principles [in OMB A–87] are for determining costs only and are not intended to identify the circumstances nor to dictate the extent of Federal and State or local participation in the financing of a particular project." OMB A–87 (Tr. 125). OMB A–87 provides broad guidelines and standards for determining costs applicable to grants, contracts, and other agreements with the State and local governments; it is not intended to address specific FFP rates for specific costs in a specific program.

Second, while the terminology employed by the HCFA is perhaps not in accordance with standard accounting terminology, as suggested by the State, that cannot be seen as contravening OMB A–87 simply because the terminology employed by the HCFA is not used in OMB A–87. Any confusion caused by the terminology is dissipated by reference to the list of costs provided in section 11275.32. The list identifies the various cost categories and whether or not the HCFA considers the costs to be "directly attributable" to an MMIS, and hence eligible for enhanced FFP.

■ The State also argues that all indirect costs in the cost allocation plan which are allocated to the MMIS program are statutorily entitled to enhanced 75% FFP. While the indirect costs in question may be allocable to an MMIS cost center, the FFP rate for such costs is not provided anywhere in OMB A–87. Indeed, OMB A–87 does not address the concept of enhanced reimbursement.

The State Medicaid Manual makes the distinction between direct and indirect costs. Direct MMIS costs, and even indirect costs if sufficiently attributable to MMIS operation, receive enhanced (75%) FFP. SMM § 11275.21. Those indirect costs which are not attributable to an MMIS operation are eligible for the normal (50%) FFP. *Id.* The distinction drawn by the HCFA is not simply between direct and indirect costs, but between indirect costs which have a sufficient nexus with an MMIS and indirect costs which lack that nexus. While such a distinction is not evident on the face of the statute or regulations, it is not precluded by a reasonable interpretation of the statute or the C.F.R., recognizing the "direct" qualifiers in C.F.R. § 432.50.[3] Further, such an interpretation does not contravene the provisions of 42 U.S.C. § 1396b. Indeed, the State is not being deprived of FFP for the costs which have an insufficient nexus with the MMIS operation as it still receives 50% FFP.

### III

■ The State further argues that the HCFA policy reverses a long-standing policy of providing 75% FFP for all indirect costs related to MMIS operation, without having articulated a reasoned analysis for the change in policy. As asserted by the State, the Supreme Court has written that "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983) (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962)). The Court continued, "we will, however, 'uphold a[n agency's] decision of less than ideal clarity if the agency's path may reasonably be discerned.'" 463 U.S. at 43, 103 S.Ct. at 2867 (citing *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974)).

Although the HCFA has been reimbursing all costs, direct or indirect, at 75% FFP for some time, it is evident that it has been struggling with the interpretation of the statute and regulations since the development of the Medical Assistance Manual in 1974. This is evidenced by the repeated revision of the applicable sections for the

---

**3.** 42 C.F.R. § 433.116(a) provides for 75% FFP for operation of an MMIS; however, § 432.50 qualifies these provisions by requiring that "for personnel engaged directly in the operation of [MMIS], the rate is 75 percent." Further, "for all other staff of the Medicaid agency ... the rate is 50 percent." 42 C.F.R. § 432.50(b)(6).

reimbursement of state-incurred MMIS costs. *See* HCFA–AT–78–33, State Medicaid Manual Part 11 (July 1981 revision, February 1982 revision, and July 1986 revision). Further, all the revisions have been to "clarify prior policy." Given the continuous revisions to the MMIS reimbursement provisions, this court finds that the HCFA policy manifests a further refinement of its interpretation of the statute. Thus the agency's path is "reasonably discerned," and the Board's decision must be upheld.

### IV

■ The State's argument that the HCFA is estopped from reducing the reimbursed amount on the ground that the State relied to its detriment on the premise that it would receive enhanced FFP for creating an MMIS is without merit. The State's participation in creating an MMIS was voluntary, not mandated. Further, the Medicaid tasks performed by an MMIS, claim processing and data retrieval, are necessary to participate in the Medicaid program whether the task is performed manually or is facilitated by use of a computerized data retrieval system. Hence, the doctrine of estoppel does not apply, because the State was not induced into creating an MMIS and has not suffered any detriment.

### V

The State's next argument is that the HCFA policy is *ultra vires*, in that it impermissibly reduces reimbursement of costs attributable to the operation of an MMIS, in violation of 42 U.S.C. § 1396b(a)(3)(B). The State argues that the HCFA policy changes the statute, rather than simply interpreting the statute, by allowing only those costs which are directly attributable to the operation of an MMIS to receive enhanced FFP.

Title 42 U.S.C. § 1396b(a)(3)(B) provides 75% FFP for those costs which are "attributable" to the operation of an MMIS. The term "attributable" is not defined anywhere in the statute, nor are indirect costs thereof addressed. As discussed earlier, the distinction made by the HCFA does not contravene the statute and is a reasonable interpretation of the statute; hence, this court cannot reject the HCFA interpretation.

### VI

■ The State's final argument is that the HCFA policy on MMIS reimbursement fails to follow the rule-making procedures mandated by the Administrative Procedures Act (APA), 5 U.S.C. § 551 *et seq.* The State argues that the HCFA policy is a substantive rule, and the HCFA's failure to abide by the notice and comment provisions of section 553 renders the HCFA policy null and void.

The APA requires that federal agencies provide notice and an opportunity for interested persons to comment on agency rules prior to their promulgation. 5 U.S.C. § 553(b) and (c). The purpose of the notice and comment procedures is to "ensure that unelected administrators, who are not directly accountable to the populace, are forced to justify their quasi-legislative rule making before an informed and skeptical public." *New Jersey v. Department of Health and Human Servs.,* 670 F.2d 1262, 1281 (3d Cir.1981). However, Congress, recognizing that a blanket requirement for notice and comment may be unduly burdensome in the case of informal rule making, provided exceptions to the general requirements for notice and comment, including an exception for interpretative rules.[4] 5 U.S.C. § 553(b)(A). Thus, the issue raised is whether the HCFA's policy, disallowing FFP for certain administrative costs which are not directly attributable to MMIS operation, was interpretive or whether it was

---

**4.** The rule-making provisions are also not applicable to matters relating to agency management or personnel or to public property, loans, grants, *benefits* or contracts. 5 U.S.C. § 553(a)(2) (emphasis added). This exemption from notice and comment requirements for HHS regulations was waived prospectively by the HHS Secretary in 1971. *See* 36 Fed.Reg. 2532 (1971).

substantive so as to bring the notice and comment provisions into play.

The distinction between legislative and substantive rule making has been described as "tenuous," "fuzzy," "blurred" and "enshrouded in considerable smog." *Community Nutrition Inst. v. Young*, 818 F.2d 943, 946 (D.C.Cir.1987) (citations omitted). A legislative rule is "the product of an exercise of delegated legislative power to make law through rules." 2 K. Davis, Administrative Law Treatise 36 (2d ed. 1979). A legislative rule implements the statute and creates new law "affecting individual rights and obligations." *Morton v. Ruiz*, 415 U.S. 199, 232, 94 S.Ct. 1055, 1073, 39 L.Ed.2d 270 (1974); *see also Chrysler Corp. v. Brown*, 441 U.S. 281, 301–03, 99 S.Ct. 1705, 1717–18, 60 L.Ed.2d 208 (1979). Conversely, an interpretative rule is "any rule an agency issues without exercising delegated legislative power to make law through rules." 2 K. Davis, Administrative Law Treatise 36. An interpretative rule is "made by an agency to give guidance to its staff and affected parties as to how the agency intends to administer a statute or regulation." *Daughters of Miriam Center for the Aged v. Mathews*, 590 F.2d 1250, 1258 (3rd Cir.1978); *Haddon Township Bd. of Educ. v. New Jersey Dept. of Educ.*, 476 F.Supp. 681, 691 (D.N.J.1979).

The federal courts have used various tests to determine whether a rule is substantive or legislative. One test maintains that a substantive rule "affect[s] substantial individual rights and obligations." *Morton v. Ruiz*, 415 U.S. at 232, 94 S.Ct. at 1073. Substantive rules create laws and impose general, additional obligations pursuant to properly delegated legislative authority. *Alcaraz v. Block*, 746 F.2d 593, 613 (9th Cir.1984).

Here, no law was created. No obligation was imposed on the State by the HCFA rule. The rule merely further explained the statutory provision for reimbursement of enhanced FFP and what costs qualify for reimbursement at the enhanced rate. The fact that the HCFA rules reduce, but do not eliminate, the federal reimbursement for certain costs not attributable to the operation of an MMIS does not make the rule substantive.[5]

■ Another test used in determining whether the rule is legislative or substantive is the label that the agency gave the rule. *Daughters of Miriam Center*, 590 F.2d at 1255–56 n. 9. However, the agency label alone is not dispositive in determining whether a given rule is legislative or interpretive. *General Motors Corp. v. Ruckelshaus*, 742 F.2d 1561, 1565 (D.C.Cir.1984), cert. denied, 471 U.S. 1074, 105 S.Ct. 2153, 85 L.Ed.2d 509 (1985). The court notes that the HCFA described the changes to the applicable SMM sections as "clarify[ing] funding policy." The HCFA has explained how the statutory and regulatory provisions allowing for enhanced FFP would be applied with respect to a specific type of indirect cost. This, while not dispositive, indicates that the HCFA was performing an interpretative function by providing details which are not specified in the statute or C.F.R. Neither the statute nor the C.F.R. addresses indirect costs.

The State cites *Community Nutrition Inst. v. Young*, 818 F.2d 943 (D.C.Cir.1987), as providing the appropriate test. In that case, the court provided two criteria for assisting in the determination of whether a rule is legislative or interpretative: (1) whether the rule establishes a binding norm, and (2) whether the rule allows the agency and its decision makers leave to exercise their discretion. *Community Nutrition Inst.*, 818 F.2d at 946 (citing *American Bus. Ass'n v. United States*, 627 F.2d 525, 529 (D.C.Cir.1980)).

If the rule acts prospectively and without binding effect, the court wrote, it is said to be interpretative. 818 F.2d at 946, n. 4. In this case, the rule had no binding effect on the State in that it did not impose any

---

5. The court notes that the interpretation of a statute will almost always affect *some* party's rights or obligations. Moreover, it cannot be said that the HCFA rule affects a "substantial" right or obligation. Hence, this test does little to determine whether a rule is substantive or legislative. *See also Alcaraz*, 746 F.2d at 613 (rejecting the substantial-impact test).

obligations upon the State, nor oblige the State to assume any obligations or duties. The rule described the costs which HHS would reimburse at an enhanced FFP and did not bind the State at all. Additionally, the rule acted prospectively, because it did not become effective until the end of the month in which it was issued. Further, the rule in question does allow the HCFA to exercise its discretion. The rule provides for enhanced (75%) FFP for those overhead and administrative costs which are attributable to MMIS operation, and normal (50%) FFP for those indirect costs which it finds have an "insufficient" nexus with MMIS operations. Determining whether a sufficient nexus exists is an exercise in discretion. Section 11275.30 provides:

> Only the direct overhead costs resulting from the operation or development of an MMIS are eligible for the enhanced FFP rates. Such costs are usually the non-personnel costs such as electricity, rent, shared facilities, caused by the operation or development of the MMIS.

The term "usually" implies that the list is not inclusive. The HCFA's discretion will naturally be required to ascertain what other costs will fall within this provision.

This court finds the HCFA policy under review to be an interpretative rule, as opposed to a substantive rule, and, as such, exempt from the rule-making notice and comment requirements. In issuing the 1986 version of Part 11 of the State Medicaid Manual, the HCFA was not imposing a new requirement upon the states. Despite the "New Policy" label, it is evident, as discussed above, that the HCFA was merely refining its interpretation of the statute. The description of changes for the applicable sections of the 1986 revisions to the State Medicaid Manual clearly states that the purpose of the changes was to "clarify" the funding policy for MMIS expenditures.

### Conclusion

This court holds that the HCFA policy in the July 1986 revision of the State Medicaid Manual regarding federal reimbursement of State indirect administrative and overhead costs is valid. The policy does not contravene the enabling statute, 42 U.S.C. § 1396b, nor the general principles and guidelines established in OMB A–87. Further, the policy is a reasonable interpretation of the statute. Additionally, this court holds that the HCFA did not violate the notice and comment provisions required by the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, because the policy falls within the exemption allowed by section 553(b)(A) for interpretative rules.

The cross-motion of the defendant, the Secretary, for summary judgment is granted. The State's motion for summary judgment is denied.