

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-18-1995

# United States of America v. Graham

Precedential or Non-Precedential:

Docket 94-1370

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

## Recommended Citation

"United States of America v. Graham" (1995). *1995 Decisions.* Paper 308.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/308

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OFAPPEALS
FOR THE THIRD CIRCUIT
_____

No. 94–1370
_____

UNITED STATES OF AMERICA

v.

VINCENT K. GRAHAM
a/k/a
SEAN G. POWELL
a/k/a
SCOTT J. CHRISTENSEN
a/k/a
PETER J. BERGMANN
a/k/a
STEPHEN T. LUDWIG
a/k/a
CHARLES D. STUART
a/k/a
JOHN T. CONNELLY
a/k/a
PETER A. MARKELLOS
a/k/a
JOSEPH T. KELLY
a/k/a
THOMAS DAMUS, JR.
a/k/a
MICHAEL JOHNSON
a/k/a
DONALD CANALE

Vincent Graham,

Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 91-cr-000163-1)

_____

Argued
September 11, 1995
Before:  MANSMANN, SCIRICA and NYGAARD, Circuit Judges.

1

(Filed December 18, 1995)

_____

Jerry S. Goldman, Esquire (Argued)
Jerry S. Goldman & Associates
1520 Locust Street
10th Floor
Philadelphia, PA  19102

            Counsel for Appellant


Michael R. Stiles, Esquire
   United States Attorney
Walter S. Batty, Jr.
   Assistant United States Attorney
   Chief of Appeals
Mary E. Crawley, Esquire (Argued)
   Assistant United States Attorney
Roland B. Jarvis, Esquire
   Assistant United States Attorney
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA  19106

            Counsel for Appellee

_____


OPINION OF THE COURT
_____


MANSMANN, <u>Circuit</u> <u>Judge</u>.

        In this criminal case, Vincent K. Graham appeals from
the sentence imposed after he pled guilty to charges of
conspiracy involving counterfeit securities and other related
charges pertaining to a scheme to defraud financial institutions.
Specifically, Graham asks us to decide whether the district court
incorrectly imposed restitution, pursuant to the Victim and
Witness Protection Act, 18 U.S.C. §§ 3579–3580 (1982), in light
of his financial inability to pay restitution.  Because the

2

district court, utilizing the current AO Form 245B which has subsequently been changed,[0] indicated that the restitution payments were to be made in installments which the probation officer could establish and periodically modify, Graham contends that the district court improperly delegated, to the probation office, the authority to designate the timing and amount of restitution payments.

In addition, Graham asserts that his sentencing hearing was improperly tainted by information proffered to the court at the sentencing hearing of Graham's co-defendant. Finally, we are asked to address whether Graham's Sixth Amendment right to counsel was denied as a result of the district court's allegedly inadequate compensation of Graham's court appointed counsel pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A(d).

We hold that the district court did not make the necessary factual finding regarding Graham's financial ability to comply with the restitution order and that AO Form 245B improperly delegates to the probation office the determination of the amount and timing of restitution installment payments. We will thus vacate the judgment of the district court and remand for further proceedings. We will dismiss the Criminal Justice Act claim, couched as a violation of Graham's Sixth Amendment right, for lack of jurisdiction.

---

[0] Because this form may still be in use in some of the district courts, we write to address this issue.

3

I.

On or about December 9, 1992, David L. Wells and Vincent K. Graham were arrested at a branch of the Meridian Bank located in Upper Darby, Pennsylvania, while attempting to withdraw money from an automatic teller machine. Pursuant to a fraudulent scheme devised by Graham, Graham and his co-conspirators passed counterfeit, forged bank checks by depositing them in "dummy" bank accounts and withdrawing the proceeds before the financial institutions were able to discover the fraud. In order to effectuate this scheme, Graham and his co-defendants placed advertisements in various newspapers soliciting the general public to submit personal information in application for employment with a fictitious company, "Transport Video East." Graham and his co-conspirators established accounts with various telephone answering services located in Pennsylvania, to receive the telephone calls and applications in response to the various solicitations as well as inquiries from the general public about the non-existent jobs. When applicants inquired about the advertised jobs, they were asked to provide personal information such as social security numbers, driver's license numbers, etc., which Graham and the others subsequently used to create duplicate drivers licenses and other forms of fraudulent identification.

Using this false identification, Graham and his co-conspirators opened bank accounts at various financial institutions. Typically, the bank accounts were opened through the mail using the fraudulently obtained names and personal information of the unsuspecting job applicants. By securing post

4

office boxes with private postal services, Graham and his co-conspirators were able to obtain addresses for the bank accounts. Utilizing this fraudulent scheme, Graham and his co-conspirators deposited counterfeit checks totalling $162,000 into the various bank accounts. They then withdrew or attempted to withdraw the funds prior to the discovery of the fraudulent nature of the transactions. According to the government, an aggregate amount of $46,792.91 was withdrawn by Graham and his co-conspirators.

On August 17, 1993, a second superseding indictment was filed charging Vincent K. Graham and two others with conspiracy to make and utter counterfeit securities in violation of 18 U.S.C. § 371 (1 count); making and uttering counterfeit securities in violation of 18 U.S.C. § 513(a) (40 counts); bank fraud in violation of 18 U.S.C. § 1344(1) (14 counts); misuse of social security documents in violation of 42 U.S.C. § 408(a)(7) (18 counts); possession of false identification documents in violation of 18 U.S.C. § 1028(a)(3) (2 counts); and aiding and abetting in violation of 18 U.S.C. § 2. On September 10, 1993, pursuant to a written plea agreement, Graham pled guilty to 23 counts of the sixty-three count indictment. The remaining counts were dismissed on the government's motion.

Subsequently, Graham was sentenced to a term of forty-six months of imprisonment on each count, to run concurrently, followed by a term of three years of supervised release. The district court also ordered Graham to pay a special assessment of $1,300 and to pay restitution in the amount of $46,692.91, jointly and severally with his co-defendants, in installments to

5

be established by the probation officer.  We turn to Graham's assertion that this order was inappropriate in light of his inability to make restitution in the amount ordered by the court.

II.

Restitution is authorized by the Victim and Witness Protection Act, 18 U.S.C. § 3663(a), as incorporated into the Sentencing Guidelines, U.S.S.G. § 5E1.1.  Section 3663(a)(1) provides that "The court, when sentencing a defendant convicted of an offense under this title . . ., may order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to any victim of the offense."  Section 3664(a) requires that the court "consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate."  18 U.S.C. §3664(a).  See also United States v. Seligsohn, 981 F.2d 1418, 1423 (3d Cir. 1992); United States v. Johnson, 816 F.2d 918, 924 (3d Cir. 1987).  We exercise plenary review over whether an award of restitution is permitted under law, but we review specific awards for abuse of discretion.  United States v. Seligsohn, supra, 981 F.2d at 1421; United States v. Copple, 24 F.3d 535 (3d Cir.) cert. denied, 115 S. Ct. 488 (1994).

A.

In applying the restitution provisions of the Victim and Witness Protection Act, district courts must make specific findings regarding the factual issues that are relevant to the

6

Act.  United States v. Logar, 975 F.2d 958, 961 (3d Cir. 1992) (quoting United States v. Palma, 760 F.2d 475, 480 (3d Cir. 1985)).  In United States v. Logar, we identified the necessary factual findings:  (1) the amount of loss, (2) the defendant's ability to pay and the financial needs of the defendant and the defendant's dependents, and (3) the relationship between the restitution imposed and the loss caused by the defendant's conduct.  Logar, 975 F.2 at 961.  The government has the burden of demonstrating by a preponderance of the evidence the amount of loss sustained by a victim.  United States v. Palma, 760 F.2d at 480; 18 U.S.C. § 3580(d).  The defendant has the burden of demonstrating, also by a preponderance of the evidence, his financial needs and resources.  Id.  Indigency at the time of sentencing is not a bar to ordering the appellant to pay restitution.  United States v. Hallman, 23 F.3d 821, 827 (3d Cir.), cert. denied, ___ U.S. ___, 115 S. Ct. 216 (1994) (citing United States v. Logar, 975 F.2d 958, 962 (3d Cir. 1992)).  "The order of restitution, on the other hand, may not be based on some future fortuitous event that may befall the appellant, but must be based on realistic expectations."  Id.

Here the government agrees with Graham that, under Logar, supra, the district court was required to make specific findings regarding Graham's ability to pay restitution.  The government concedes that this was not done.[0]  Accordingly, we

_____

[0]    The only explicit finding that the district judge made regarding Graham's financial capacity was in connection with Graham's ability to pay a fine.  The district court, declining to impose a fine, stated:  "I don't believe you can pay a fine so

7

will remand the order of restitution to the district court so that this finding can be made.  In addition, on remand, the district court should make specific findings of fact not only concerning Graham's current financial status but also on his ability to earn income in the future before the court sets an appropriate amount of restitution, if any.[0]  See United States v. Logar, 975 F.2d at 963.

---

I'm not imposing a fine."  (App. 64).  It is anomalous that the district court concluded that Graham would be able to pay approximately $46,000.00 in restitution if he is unable to pay any fine, even in installments.  Perhaps the district court found that Graham would be unable to pay a fine in light of the amount of restitution that Graham was ordered to make.  In any event, the lack of record findings makes these claims difficult to review.

[0]     The presentence report summarizing Graham's educational and vocational skills and his employment history indicated that Graham completed a personal financial statement which did not reveal any assets, but set forth liabilities of $3,600 and indicated that since he has been incarcerated, Graham has had no income or expenses.  The presentence report indicated, however, that Graham has stated the he realized about $4,000 from his involvement in this case and that he used this money for living expenses.

    The government asserts that Graham may have assets that are secreted.  Graham and his conspirators received approximately $46,000 as a result of their fraudulent scheme.  This money has not been recovered.  Thus, on remand the court could determine that there were assets that were secreted, provided that there is evidence to support such a finding.

8

B.

On remand, the district court must also designate the timing and amount of the restitution payments. Pursuant to 18 U.S.C. § 3663(f)(1), in ordering restitution, "The court may require that such defendant make restitution under this section within a specified period or in specified installments."[0]

Utilizing AO Form 245B (Rev. 7/92), entitled Judgment in a Criminal Case, the district court indicated, by placing an "X" in the appropriate box, that the schedule of restitution payments were to be made "in installments which the probation officer shall establish and may periodically modify provided that the entire financial penalty is paid no later than five years after release from incarceration . . . ."[0] We agree with the government, and with Graham, that the district court, in this manner, improperly delegated to the probation officer the determination of the timing of the restitution installment

---

[0] We do not read section 3663 as <u>requiring</u> that a judge establish a payment schedule. On the contrary, 18 U.S.C. §3663(f)(1) does <u>not</u> require courts to establish schedules of any kind. Thus, a court is free to order that restitution be made in a lump sum payment, if appropriate.

[0] We are aware that AO Form 245B has been revised and that the latest version of this form is dated 3/95. This new form does not contain these provisions that allow delegation of the determination of the schedule of payments. The U.S. Attorney for the Eastern District of Pennsylvania (who was advised by the Senior Deputy Chief U.S. Probation Officer) has informed us that the District Court for the Eastern District of Pennsylvania continues to use the old form for its judgment and commitment orders, and will continue to do so until training is provided by the National Fines Center. Although it is anticipated that the Eastern District of Pennsylvania will receive its training in April 1996, until this time, the district courts should not utilize this form in such a manner as to delegate the timing and amount of restitution payments to the probation officer.

9

payments.  While the district court is always free to receive and consider recommendations from the probation officer in this regard, we believe that section 3663 does not permit a district judge to delegate to the administrative staff these specifications.  So, too, must the court determine the extent to which payment may be deferred.  Accord United States v. Albro, 32 F.3d 173 (5th Cir. 1994); United States v. Ahmad, 2 F.3d 245 (7th Cir. 1993).


C.

Finally, Graham contends that the district court failed to determine the appropriate amount of restitution.  Graham suggests that the district court erred in its determination of the amount of restitution because the court relied on the probation officer's calculations of the amount of the loss, rather than personally reviewing or examining the underlying evidence.

In United States v. Logar, we held that, notwithstanding estimates of loss in a presentence report, the district judge must point to the evidence in the record supporting the calculation of loss to the victims.  975 F.2d at 961-61.  See also United States v. Copple, 24 F.2d at 549-50.  In Logar, the district court, without identifying any record support, accepted the government's suggestion that $10 million (which was the loss to investors estimated in the Presentence Investigation Report) would constitute an appropriate amount of

restitution.  We held that this was error and that a remand was necessary.

Here, although the amount of the actual loss was disputed, the district court accepted the figure that had been calculated by the probation department because this figure was based upon documentation that the probation department had received from the financial institutions that suffered loss.[0]

[0]     The Federal Bureau of Investigation, (FBI), has documented $46,692.91 in losses to the victims.  Specifically they can be broken down further:

> South Carolina National Bank, 1628 Browning Road Annex Building, Columbia, South Carolina 29226                        – $16,804.17
>
> First Union National Bank, P.O. Box 3008, Raleigh, North Carolina 27602     – $4,992.70
>
> Trust Company Bank, Security Department, P.O. Box 4418, Atlanta, Georgia 27602 – $500.00
>
> Mid–Atlantic National Bank (Continental Bank is a subsidiary), P.O. Box 600 Edison, N.J. 08818                        – $2,311.43
>
> Firstrust Savings Bank, 1931 Cottman Avenue, Philadelphia, PA 19111          – $4,950.00
>
> Nations Bank of North Carolina, P.O. Box 27287, Raleigh, N.C. 27611–7287  – $3,504.89
>
> Merchants Bank/Fidelity Bank, 26 South Seventh Street, Allentown, PA 18101
>                        – $8,136.78
>
> Mellon/PSFS Melon Independence Center, 701 Market Street, Philadelphia, PA 19106
>                        – $2,709.00
>
> Corestates, P.O. Box 7618, Philadelphia PA 19101, Attention F.C.121020     – $2,291.02
>
> Germantown Savings Bank, 1 Belmont Avenue, Bala Cynwyd, PA 19004          – $400.00

This information had previously been supplied to and verified by the FBI. (App. 52-54). Accordingly, the district court did not err in relying on this information in its determination of the amount of restitution.[0]

                              III.

Graham contends next that his sentencing hearing was improperly tainted by allegations that were raised without notice to him or the opportunity to respond or challenge their accuracy, in violation of Graham's statutory and constitutional rights.[0]

---

                    Commonwealth Federal Savings Bank, P.O. Box
                    2190, 70 Valley Stream Parkway, Valley Forge,
                    PA 19482                        - $92.92

[0]    Graham also contends that the district court erred in not crediting Graham with the value of property already seized in an allegedly related forfeiture proceeding. At his sentencing hearing, Graham requested that the value of an automobile, a Jaguar which was forfeited by the FBI, should be utilized to reduce the outstanding and unreimbursed losses suffered by the victims of Graham's crime. The district court did not offset the aggregate amount of restitution that Graham and his co-defendants were jointly and severally liable for by the value of the car, apparently because the car belong to Graham's sister and because it had been forfeited in a separate proceeding by the FBI. Because we have no record of the forfeiture proceeding, we have no record from which to review this claim. (App. 55-56).

       Graham's remaining contention that, based upon the facts of this case, the imposition of the restitution order was disproportionate to the gravity of the offense, and therefore, violative of the Eighth Amendment protection against excessive fines is without merit.

[0]    Unlike the concurring opinion, we believe our jurisdiction to review Graham's sentence lies pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1) because Graham has alleged that his sentence was imposed in violation of law, that is, in violation of his constitutional rights.

       This case is unlike the situation confronting us in United States v. Perakis, 937 F.2d 110 (3d Cir. 1991), in which

                              12

Apparently, one half-hour prior to the imposition of Graham's sentence, Graham's codefendant, David Lee Wells, was sentenced in a separate proceeding.  At Wells' sentencing, Wells' attorney advised the court:

> He [Wells] placed himself at some risk of danger by cooperating and in fact was threatened at some point in the case.  One of the agents, Mr. Henry, is here today, helped to find Mr. Wells a hotel in New Jersey where he stayed for a while when a threat was made from the lead co-defendant and in fact encouraged and was fully aware that Mr. Wells was going down south to live with family for most of the summer and the reason for that

we were asked to review a sentencing court's discretionary refusal to impose a substitute detention under the Guidelines (section 5C1.1(c)(2)) and is also unlike the situation in United States v. Denardi, 892 F.2d 269 (3d Cir. 1990), in which we lacked jurisdiction over Denardi's appeal from a sentencing decision because that appeal was based on the district court's discretionary refusal to depart downward from the sentencing guidelines.  Because Graham does not challenge the district court's discretion to set a sentence anywhere within a properly calculated guidelines range, Denardi, supra, Perakis, supra and the cases cited in the concurring opinion from other courts of appeals (footnote 1, p. __ infra) are not implicated here.yUnlike the concurring opinion, we believe our jurisdiction to review Graham's sentence lies pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1) because Graham has alleged that his sentence was imposed in violation of law, that is, in violation of his constitutional rights.

        This case is unlike the situation confronting us in United States v. Perakis, 937 F.2d 110 (3d Cir. 1991), in which we were asked to review a sentencing court's discretionary refusal to impose a substitute detention under the Guidelines (section 5C1.1(c)(2)) and is also unlike the situation in United States v. Denardi, 892 F.2d 269 (3d Cir. 1990), in which we lacked jurisdiction over Denardi's appeal from a sentencing decision because that appeal was based on the district court's discretionary refusal to depart downward from the sentencing guidelines.  Because Graham does not challenge the district court's discretion to set a sentence anywhere within a properly calculated guidelines range, Denardi, supra, Perakis, supra and the cases cited in the concurring opinion from other courts of appeals (footnote 1, p. __ infra) are not implicated here.

> was so that he could be protected from any
> danger to himself because of his cooperation.

App. 68. (During Wells' sentencing Graham is referred to as the lead co-defendant. <u>Id.</u>) Graham believes that this information was prejudicial to him because when Graham was subsequently sentenced, he was sentenced to a term of forty-six months, the maximum sentence within his Guidelines range.

We reject Graham's suggestion that his sentence was impermissibly tainted by Wells' sentencing proceeding. There is nothing in the record of Graham's sentencing hearing that suggests that the district court relied on the statements proffered during Wells' sentencing hearing in imposing Graham's sentence. (App. 65-70). We are confident that experienced district judges are able to avoid the influence of inappropriate, irrelevant or extraneous information.

Because we do not think that the record in this case establishes a violation of Graham's confrontation or due process rights, we do not need to explore here the parameters of a criminal defendant's confrontation and due process rights at the sentencing stage.

IV.

Graham's final assertion relates to the application of the Criminal Justice Act in this case. The provisions of the Criminal Justice Act, 18 U.S.C. § 3006A (1976), govern the payment of claims for compensation for services rendered and expenses incurred by attorneys appointed to represent federal defendants financially unable to obtain counsel. Where representation is furnished before a district court, a claim for compensation and reimbursement, supported by a sworn written statement, is submitted to that court. § 3006A(d)(4). Pursuant to section 3006A(d)(4) the district court "shall fix the compensation and reimbursement to be paid to the attorney ...." Id. The Criminal Justice Act limits compensation to specified maximum amounts. § 3006A(d)(2). Payments in excess of these amounts may be made, however "for extended or complex representation whenever the court in which the representation was rendered . . . certifies that the amount of the excess payment is necessary to provide fair compensation and the payment is approved by the chief judge of the circuit." § 3006A(d)(3).

Graham contends that his Sixth Amendment right to counsel was denied due to the district court's implementation of the Criminal Justice Act here which included delays in the disbursement of legal fees to court appointed counsel and an award of compensation which was substantially less than counsel's actual costs for representing Graham in this case. Notwithstanding defense counsel's apparent dissatisfaction with the timing and amount of his fee award under the Criminal Justice

15

Act, the present record reveals that this did not impact upon the representation Graham received.

Thus, counsel's attempt to convince us to review the payment of his legal fees under the Criminal Justice Act as violative of Graham's Sixth Amendment rights must fail. To the extent that counsel is personally dissatisfied with the fee awarded by the district court pursuant to 18 U.S.C. §3006A(d)(3), we note that this is not the proper forum for counsel's claims.[0] We do not have jurisdiction to entertain an appeal from an award of compensation and expenses under the Criminal Justice Act. In Landano v. Rafferty, 859 F.2d 301 (3d Cir. 1988), we held that a district court's order denying counsel's request for retroactive appointment and waiver of the maximum allowable fee under the Criminal Justice Act constituted rulings which ultimately implicated the amount of compensation to be allowed counsel by the district judge and as such were rulings that were not final decisions within the meaning of 28 U.S.C. §1291 because the district court's decision determining the amount of compensation is essentially administrative in nature. Accordingly, we will dismiss this claim for lack of appellate jurisdiction.

V.

---

[0]     If counsel is dissatisfied with the fee awarded by the court pursuant to 18 U.S.C. § 3006A(d)(3), counsel should seek reconsideration of the award before the district court.

16

For the foregoing reasons we will vacate the Judgment in a Criminal Case entered by the district court and remand for resentencing.

United States v. Graham, No. 94-1370

NYGAARD, Circuit Judge, concurring.

I write separately because I conclude that we should not consider the issue the majority reaches in Section III of its opinion.

18 U.S.C. § 3742(a) provides that a defendant may only file a notice of appeal of a sentence when it is imposed: (1) in violation of law; (2) through an incorrect application of the guideline; (3) in excess of the guidelines; or (4) where there is no guideline and the sentence is plainly unreasonable. None of those four conditions apply here.

Graham was sentenced to prison for a term of 46 months, a sentence within, albeit at the top of, his guideline range. He does not allege error in the calculation of his guideline range, nor that his presentence investigation report contained anything improper. Moreover, he does not take issue with the sentencing guideline range of 37 to 46 months and concedes that the district court sentenced him within the appropriate guideline range.

Graham only speculates on appeal that the district court may have considered factors to which Graham did not have an opportunity to respond. Inasmuch as the sentencing range is under 24 months, the district court was not required to give reasons for its decision to sentence Graham at the top of the guideline range. See 18 U.S.C. § 3553(c). Nonetheless, even following an independent review of the record, I cannot find

18

evidence of any impropriety that would allow us to speculate that the district court may have violated the law in sentencing Graham.  Hence, I conclude that Graham has failed to show any error that satisfies the requisites of 18 U.S.C § 3742(a).

Section 3742 is a gatekeeping provision.  Congress provided it to establish "a limited practice of appellate review of sentences in the Federal criminal justice system" (emphasis supplied), that would "preserve the concept that the discretion of a sentencing judge has a proper place in sentencing and should not be displaced by the discretion of an appellate court."  S. Rep. No. 225, 98th Cong., 2d Sess. 149-50 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3332-33.

My view of the limited appellate review of guideline sentences is further supported in the legislative history of §3742:

> Appellate courts have long followed the principle that sentences imposed by district courts within legal limits should not be disturbed. . . .  [The Sentencing Reform Act is] intended to afford enough guidance and control of the exercise of [district court] discretion to promote fairness and rationality, and to reduce unwarranted disparity, in sentencing.  Section 3742 accommodates all of these considerations by making appellate review of sentences available equally to the defendant and the government, and by confining it to cases in which the sentences are illegal, are imposed as the result of an incorrect application of the sentencing guidelines, or are outside the range specified in the guidelines and unreasonable.

19

S. Rep. No. 225, supra, at 150, 1984 U.S.C.C.A.N. at 3333
(footnote omitted).

In United States v. Perakis, 937 F.2d 110 (3d Cir.
1991), we held that we did not have jurisdiction to review a
sentencing court's discretionary refusal to grant substitute
detention under U.S.S.G. § 5C1.1(c)(2).  We held that unless one
of the "four necessary circumstances exist to permit . . .
appeal," we do not have jurisdiction to review a district court's
decision as long as its sentence remains within the boundaries of
the guidelines.  937 F.2d at 111.  In Perakis we were following
the lead of United States v. Denardi, 892 F.2d 269, 271-72 (3d
Cir. 1989), in which we held that § 3742(a) does not authorize an
appeal from a district court's discretionary refusal to depart
from the applicable guidelines range.

Although the precise issue presented to us here was not
decided in either Perakis or Denardi, once we determine that the
district court committed no error of law, I suggest that both
cases counsel against affirming the district court with regard to
the allegation of error addressed in this portion of the appeal.
I would dismiss the appeal with respect to this allegation of
error, rather than affirm the judgment of the district court.  In
reaching this conclusion, I would join eight other courts of
appeals that have similarly decided the question.[0]

---

[0]See United States v. Garrido, 38 F.3d 981, 986 (8th Cir. 1994);
United States v. Mihm, 13 F.3d 1200, 1205 (8th Cir. 1994)
("Because the district court then imposed a sentence within the
range, we have no jurisdiction to review the sentence."); United
States v. Woodrum, 959 F.2d 100, 101 (8th Cir. 1992) (per curiam)
("A sentence is not reviewable merely because it is at the top of

20

a properly calculated Guideline range."); <u>United States v. Lopez</u>, 974 F.2d 50, 53 (7th Cir. 1992) ("Courts have great flexibility in picking a sentence within the range."); <u>United States v. Garcia</u>, 919 F.2d 1478, 1482 (10th Cir. 1990) ("We are unwilling to scrutinize sentencing justifications offered by a district court when the sentence is within an admittedly appropriate range unless those justifications implicate 18 U.S.C. § 3742(a)(1) or (2)."); <u>United States v. Vega–Encarnacion</u>, 914 F.2d 20, 25 (1st Cir. 1990) (We have "no appellate jurisdiction to consider a sentence that was within the applicable guideline range and was correctly determined."), <u>cert. denied</u>, 499 U.S. 977 (1991); <u>United States v. Porter</u>, 909 F.2d 789, 794 (4th Cir. 1990); <u>United States v. Pelayo–Bautista</u>, 907 F.2d 99, 101–102 (9th Cir. 1990); <u>United States v. Tucker</u>, 892 F.2d 8, 11 (1st Cir. 1989) (The legislative history "further implies that Congress did not intend to allow an appeal from a sentence <u>within</u> the Guidelines."); <u>United States v. Colon</u>, 884 F.2d 1550, 1555 (2nd Cir. 1989) ("Congress's failure to provide appellate review of sentences within the Guidelines correctly calculated was thus a conscious decision consistent with its overall purpose. . . .  If not inexorable, the provision of appellate review solely for departures is understandable. . . .  Sentences within the Guidelines may be deemed to be reasonable and within the exclusive discretion of the sentencing court solely because of the Commission's blessing of the permissible range."), <u>cert. denied</u>, 493 U.S. 998 (1989).  The Eleventh Circuit has taken a unique approach, although the effect is identical.  <u>See United States v. Fossett</u>, 881 F.2d 976, 979 (11th Cir. 1989) (A sentence is a final decision within the meaning of 28 U.S.C. § 1291, and hence, we have jurisdiction.  18 U.S.C. § 3742 "does not regulate the jurisdiction of the courts of appeals over appeals themselves; rather section 3742 defines the claims that the courts of appeals may hear in reviewing an appeal.").  <u>See also</u> U.S.S.G. § 5C1.1(a) ("A sentence conforms with the guidelines for imprisonment if it is within the minimum and maximum terms of the applicable guidelines range.").