UNITED STATES of America,

v.

**Moshe RUBASHKIN, Appellant.**

**No. 02–4180.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) July 23, 2003.

Decided Aug. 29, 2003.

Bernadette A. McKeon, Philadelphia, PA, for Appellee.

Nicholas J. Nastasi, Philadelphia, PA, for Appellant.

Before ALITO, FUENTES, and BECKER, Circuit Judges.

## OPINION OF THE COURT

FUENTES, Circuit Judge.

Defendant Moshe Rubashkin appeals the entry of judgment and the imposition of a 15–month term of incarceration in connection with his plea of guilty to one count of bank fraud. Rubashkin contends that the District Court erred in considering an earlier incident in which Rubashkin was placed in an Accelerated Rehabilitation Disposition ("ARD") program as a result of his violation of the Pennsylvania Workmen's Compensation Law. According to the defendant, his participation in the ARD did not result in a disposition of guilt. In addition, he argues that the District Court erred in failing to give an explanation for its 15–month sentence. We find that the District Court did not err in considering the events surrounding Rubashkin's ARD for purposes of determining his sentence within the relevant guideline range and that the Court's statement of reasons was appropriate under 18 U.S.C. § 3553. Therefore, we will affirm the judgment of the District Court.

## I.

Rubashkin was the owner and president of Montex Textiles Ltd. ("Montex"), a supplier of raw textiles material located in Allentown, PA. In August 1998, Montex opened separate payroll and general expense accounts with First Union National

Bank ("First Union"). Rubashkin and another individual had signatory authority on both of Montex's accounts.

The Government's investigation revealed that between March 25, 1999 and March 30, 1999, Rubashkin attempted to deposit three checks payable to Montex, all drawn from the account of an entity named First Choice Associates, into Montex's First Union accounts. In the aggregate, the three checks totaled approximately $325,000. Rubashkin withdrew or used most of the funds which he attempted to deposit. Shortly thereafter, First Union learned that there were insufficient funds in the account from which the deposited checks were drawn. The fraud resulted in a loss to the bank in excess of $300,000.

Prior to the offense conduct in question, Rubashkin was involved in a separate punishable offense in connection with his operation of Montex. Pennsylvania law requires companies to secure worker's compensation insurance for their employees. *See* 77 Pa. Cons.Stat. Ann. § 501. Nevertheless, when an employee of Montex became injured and attempted to recover disability payments, it became apparent that Rubashkin, in his capacity as president of Montex, had failed to secure the required insurance. On May 4, 2001, Rubashkin was placed in an ARD program for a period of 18 months. Subsequently, he was ordered to pay $968 in fines, costs, and restitution.

On June 6, 2002, the defendant was charged in a one-count information with bank fraud in violation of 18 U.S.C. § 1344. Pursuant to a negotiated plea agreement, Rubashkin entered a plea of guilty to the sole count on July 31, 2002. The District Court conducted a sentencing hearing on November 6, 2002. At the hearing, the District Court accepted the parties' modification of Rubashkin's guideline offense level, which (1) eliminated the two-level enhancement for more than minimal planning, and (2) correspondingly reduced the acceptance of responsibility reduction to two levels, instead of three. The Court also denied the defendant's motion for downward departure. The Court thus determined that Rubashkin's guideline offense level was 12, with a criminal history category of I, reflecting no criminal history points. The criminal history computation was made without regard to Rubashkin's ARD. Therefore, the applicable guideline range for defendant's offense was 10 to 16 months of imprisonment.

At the sentencing hearing, the District Court also inquired into Rubashkin's ARD. *See* Joint App. at 27a, 39a–40a. When asked if the paragraph in the pre-sentence investigation report ("PSR") relating to his ARD was true, Rubashkin confirmed that it was. Specifically, the Court and the defendant engaged in the following colloquy:

> THE COURT: Before you leave, I'd like you to take a moment and turn to page six of the presentence investigation report and read paragraph 31 to yourself . . . .
>
> THE COURT: Is that correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Thank you. That's all I wanted to know.

*Id.* at 39a–40a.

The Court then sentenced the defendant to 15 months of imprisonment and 5 years of supervised release and ordered restitution in the amount of $232,936.99.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction to review the entry of judgment and imposition of sentence pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, to the

extent that Rubashkin's appeal alleges errors of law.

## III.

■ Rubashkin's primary argument on appeal is that the District Court erred in considering his May 2001 ARD in determining his sentence.[1] In doing so, Rubashkin relies heavily on § 4A1.2(f) of the United States Sentencing Guidelines ("USSG"). At the outset, we note that neither the Probation Office, nor the District Court violated § 4A1.2(f) in the computation of his criminal history category. Section 4A1.2 is titled "Definitions and Instructions for Computing Criminal History," and subsection (f) merely provides that, "[d]iversion from the judicial process without a finding of guilt (e.g., deferred prosecution) is not counted [in the computation of criminal history]." USSG § 4A1.2(f). In the present case, both the Probation Office and the District Court recognized that Rubashkin's ARD was a diversionary disposition within the meaning of § 4A1.2(f), and therefore, the defendant was not assessed any criminal history points. In fact, Rubashkin cannot point to any error in the computation of his criminal history category.

The most that can be said of the defendant's ARD is that the District Court may have considered it, in conjunction with other possible relevant factors, in determining where, within the properly calculated guideline range, to sentence Rubashkin. As to this inquiry, § 4A1.2(f) simply does not control. Rather, that inquiry is guided by § 1B1.4 which provides: "[i]n determining the sentence to impose *within the guideline range,* or whether a departure from the guidelines is warranted, the court may consider, *without limitation, any information concerning the background, character and conduct of the defendant,* unless otherwise prohibited by law." USSG § 1B1.4 (emphases added).[2] The commentary to § 1B1.4 expressly contemplates the scenario where a court could consider an unindicted offense when determining where to sentence a defendant within the guideline range: "if the defendant committed two robberies, but as part of a plea negotiation entered a guilty plea to only one, the robbery that was not taken into account by the guidelines would provide a reason for sentencing at the top of the guideline range and may provide a reason for sentencing above the guideline range." USSG § 1B1.4, commentary. The language of § 1B1.4 makes it clear that "Congress intended that no limitation

---

1. Rubashkin's argument on appeal requires some clarification. He contends that the District Court actually considered his ARD and that the ARD was a factor in the Court's decision to sentence him at the high end of the applicable guideline range. To some extent, this is speculation because, beyond the colloquy above, the District Court did not expressly state what impact the ARD had on its ultimate sentence. We also agree with the Government that there were other factors which could have contributed to the decision to sentence the defendant to 15 months of incarceration. *See* Appellee's Brief, at 18 n. 6. Nevertheless, the record reflects that the District Court inquired about the ARD and issued its sentence immediately following the colloquy above. Therefore, we accept Rubashkin's argument that his ARD was likely a consideration in the District Court's sentencing decision, and our analysis proceeds from this general presumption. We will not, however, speculate as to whether Rubashkin's ARD was the sole or primary reason for his ultimate sentence.

2. USSG § 1B1.4 explicitly references 18 U.S.C. § 3661 which states: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

would be placed on the information that a court may consider in imposing an appropriate sentence." *Id.*

Although district courts may consider a broad range of factors at sentencing, we recognize that the breadth of § 1B1.4 is limited to background information not "otherwise prohibited by law." The commentary to § 1B1.4 expressly references the policy statements in Chapter 5, Part H of the Sentencing Guidelines as providing examples of factors that should not be considered or should only be considered for limited purposes. USSG § 1B1.4, commentary. For instance, as the Government observes, § 5H1.10 provides that considerations of race, sex, national origin, creed, religion, and socioeconomic status are not relevant in the determination of a sentence. We note that none of the policy statements in Chapter 5, Part H suggests, either explicitly or implicitly, that a diversionary disposition should not be considered in sentencing decisions under § 1B1.4.

This Court's precedents support the "considerable leeway" afforded to sentencing courts pursuant to § 1B1.4. *See United States v. Baird,* 109 F.3d 856, 863 (3d Cir.1997). In *Baird,* we addressed the issue of whether conduct underlying dismissed counts was relevant in deciding whether to depart upward from the guidelines range. We held that "conduct underlying dismissed counts—which is conduct that is neither formally charged nor an element of the offense—may be considered at sentencing," so long as the dismissed counts related in some way to the offense conduct. *Id.* at 864–65. Our decision relied in part on the Supreme Court's decision in *United States v. Watts,* 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997), where the Court held that a sentencing court may consider the conduct underlying an acquitted charge pursuant to § 1B1.4, as long as the conduct at issue has been proved by a preponderance of the evidence. Given that § 1B1.4 permits the consideration of conduct underlying dismissed counts and conduct of which a defendant has been acquitted, there is simply no support for Rubashkin's position that the District Court was not permitted to consider his diversionary disposition.

■ Notwithstanding the District Court's straightforward consideration of his ARD, Rubashkin contends that the Court's sentencing decision was improper in two additional respects. First, Rubashkin argues that by considering his diversionary disposition and sentencing him to the high end of the applicable range, the District Court in effect incorporated his ARD into his criminal history category because the sentence ultimately imposed would have been at the middle of the guidelines range upwardly adjusted for his criminal history.[3] Thus, Rubashkin merely makes the unremarkable observation that his guideline range overlaps with the hypothetical range that would have applied if he was in the next higher criminal history category. This is beside the point. At any given offense level, a number of the ranges along the criminal history category axis overlap. The relevant inquiry is not whether the ranges overlap, but rather

---

**3.** With an offense level of 12 and a criminal history category of I, the applicable guidelines range was 10 to 16 months. With the same offense level of 12 and a criminal history category of II, Rubashkin's guidelines range would have been 12 to 18 months.

As discussed above, we fail to see the relevance of this argument, and in any event, the Government correctly points out that even if Rubashkin's ARD had actually been considered, it would have resulted in only one criminal history point which would have left the defendant in the same criminal history category I. *See* USSG § 4A1.1(c).

whether the District Court lawfully exercised its wide latitude in sentencing the defendant within the properly calculated guideline range.

■ Lastly, Rubashkin contends that the District Court erred in failing to state its reasons for imposing a 15–month term of incarceration. We disagree. 18 U.S.C. § 3553 requires a district court to state the reasons for its sentence when (1) the sentence departs from the applicable guideline range; or (2) the sentence is within the guideline range and that sentence exceeds 24 months. It follows that when the applicable guideline range is less than 24 months and the sentence ultimately imposed is within the applicable range, the court is not required to state its reasons. *See United States v. Graham,* 72 F.3d 352, 360 (3d Cir.1995) (Nygaard, J., concurring).

For these reasons, we hold that the District Court did not err by inquiring into or considering Rubashkin's diversionary disposition when determining where, within the properly calculated guideline range, to sentence the defendant. Furthermore, we find that the District Court was not required to state the reasons for its sentence because the applicable guideline range was less than 24 months, and the sentence ultimately imposed was within that range.

### IV.

For the reasons set forth above, we will affirm the judgment of the District Court.