NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2465
_____

UNITED STATES OF AMERICA

v.

THEA TAFNER,
                    Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 10-cr-00366-001)
District Judge: Honorable Yvette Kane

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 18, 2012

Before:  SCIRICA, AMBRO and FISHER, *Circuit Judges*.

(Filed: May 29, 2012)
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Thea Tafner appeals the sentence imposed by the United States District Court for

the Middle District of Pennsylvania for her conviction under 18 U.S.C. § 669 for theft or

embezzlement in connection with a healthcare benefit program. Tafner entered into a

negotiated plea agreement with the federal government on January 7, 2011 and was

sentenced to 30 months' imprisonment and $1,816,045 in restitution. As part of its sentence, the court ordered that Tafner pay $124,869 of the restitution amount within 60 days. Tafner contends the immediate payment provision violates a material term of her plea agreement. The government asserts her appeal should be dismissed because Tafner waived her right to appeal and, in the alternative, the sentence is consistent with the plea agreement. We will affirm.

I.

Tafner served as the chairperson for American Hose Community Ambulance Company ("American Hose Ambulance"), of Mount Carmel, Pennsylvania, for a period of fourteen years. American Hose Ambulance was an ambulance services organization operated by the American Hose and Chemical Fire Company ("American Hose"). Tafner's responsibilities for American Hose Ambulance included managing its operations and finances.

In October 2000, Tafner began diverting funds from American Hose, the parent company, into a separate bank account for which she was the only authorized signatory. These funds consisted of payments to American Hose from Medicare and other insurance companies. By November 2009, Tafner had steered a total of $3,712,203 into the separate account, over $2 million of which represented payments from Medicare. She converted $1,816,045 of those funds for personal use, using the money to landscape her house, build a nursery, and fund a home décor business operated by her brother. In March 2010, Tafner's activities resulted in the closure of American Hose Ambulance.

2

In December 2010, the government issued a one-count felony Information charging Tafner with willfully embezzling, stealing or otherwise converting for her own use an excess of $1,000,000 that was intended for the benefit of a healthcare benefit program, in violation of 18 U.S.C. § 669. On January 7, 2011, Tafner entered into a negotiated plea agreement and waived her right to appeal. Under Paragraph 16 of the agreement, she also committed to "make full restitution in accordance with a schedule to be determined by the court," with "the amount of the loss resulting from the defendant's actions [to] be determined at the pre-sentencing hearing." The government, under Paragraph 15(a), committed "not to seek forfeiture or garnishment of any funds held in defendant's Public School Employees' Retirement System Account" and "not to use any funds derived from this account as substitute assets to satisfy any judgment in this case."[1] But the last sentence of Paragraph 15(a) also stated: "This agreement does not affect defendant's obligations set forth in Paragraph 16." Additionally, the plea agreement provided that "the Court is not a party to and is not bound by [the] agreement nor any recommendations made by the parties"; that the court was "free to impose upon the defendant any sentence up to and including the maximum sentence of imprisonment for 10 years, a fine of $250,000 [and] a maximum term of supervised release of up to three years"; and that if the court "imposes a sentence with which the defendant is dissatisfied, the defendant will not be permitted to withdraw any guilty plea for that reason alone."

---

[1] At the time of her guilty plea, Tafner had worked for thirty-five years for the Line Mountain School District in Herndon, Pennsylvania. She had worked as a principal for seven years and as an elementary school teacher for twenty-eight. Accordingly, Tafner had acquired interest in a vested retirement account in the Public School Employees' Retirement System.

After her plea hearing but before sentencing, Tafner "rolled over" $121,471 from her Public School Employees' Retirement System ("PSER") account into an individual retirement account ("IRA") at First Columbia Bank and Trust. She also arranged for PSER to directly forward her a lump-sum payment of $3,398. On April 28, 2011, the government filed a Pre-Sentencing Report ("PSR") and included both amounts – the $121,471 in the IRA and the $3,398 to be forwarded to Tafner directly – in its estimation of her total assets. It labeled these payments "Ms. Tafner's total contributions and interest in her retirement account." The government advised the court, "[i]n view of [Tafner's] assets, which include equity in two residences and recent retirement payments, it appears that the defendant has the ability to make a significant lump sum payment toward restitution." Tafner sent a letter to the Probation Office objecting to the use of her retirement funds to satisfy the restitution order. In an off-the-record meeting with the court and with opposing counsel on the day of sentencing, Tafner's counsel raised the issue of "the structuring of restitution."

At Tafner's sentencing hearing, the District Court imposed a sentence of 30 months' imprisonment and $1,816,045 in restitution. It also ordered that Tafner pay $124,896 of the restitution amount within 60 days. Tafner filed a notice of appeal.

II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291. *See United States v. Gwinnet*, 483 F.3d 200, 203 (3d Cir. 2007) (holding the court of appeals had subject matter jurisdiction notwithstanding a defendant's waiver of appellate rights in a plea agreement). Our

4

review of the validity and applicability of the appellate waiver in Tafner's plea agreement is de novo. *United States v. Jackson*, 523 F.3d 234, 237 (3d Cir. 2008). As to whether the award of restitution was permitted by law, our review is also plenary. *United States v. Graham*, 72 F.3d 352, 355 (3d Cir. 1995). As to the specific award, we review for abuse of discretion. Id.

### III.[2]

Tafner argues the District Court violated a material term of her plea agreement when it ordered her to make a lump-sum restitution payment of $124,869 within 60 days. Under Paragraph 15(a), the government agreed "not to seek forfeiture or garnishment of any funds held in defendant's Public School Employees' Retirement system account" and "not to use any funds derived from this account as substitute assets to satisfy any judgment in this case." This gave her a reasonable understanding, she contends, that her PSER "account would not be liquidated and applied to restitution as a lump sum."

We interpret plea agreements under contract law standards, looking to "what was reasonably understood by [the defendant] when he entered his plea of guilty." *United*

---

[2] The government contends we should summarily affirm the District Court's order because Tafner waived her rights to appeal when she entered into the plea agreement. It cites Paragraph 26, which stated "the defendant knowingly waives the right to appeal any conviction and sentence." Tafner responds that enforcement of the appellate waiver would result in a miscarriage of justice because her reasonable understanding was that Paragraph 15(a) protected her PSER account from immediate liquidation, and the effect of the court's order was to require she draw down the account, now transferred to an IRA, within 60 days. See *United States v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001) (holding that appellate waivers can be relaxed when their enforcement would "work a miscarriage of justice"). We need not resolve this issue because, as explained below, Tafner cannot prevail on the merits of her claim – namely, she cannot show the District Court violated her reasonable understanding of the plea agreement.

*States v. Gilchrist*, 130 F.3d 1131, 1134 (3d Cir. 1997) (internal quotation marks and citation omitted). In this case, no reasonable understanding of the plea agreement would have supported a belief that the sentencing court was bound to the terms of Paragraph 15(a). Under Paragraph 16, the agreement clearly stated that it was the court, not the government, that would set the restitution amount and schedule of payments. It provided, "[t]he defendant agrees to make full restitution in accordance with a schedule to be determined by the court," and that "the amount of the loss . . . will be determined at the pre-sentencing hearing." Paragraph 21 was also explicit that the court was "not bound by [the] agreement nor any recommendations made by the parties" and was "free to impose upon the defendant any sentence up to and including the maximum sentence . . . ." Under Paragraph 22, were the court to "impos[e] a sentence with which the defendant is dissatisfied, the defendant will not be permitted to withdraw any guilty plea for that reason alone, nor will the defendant be permitted to withdraw any pleas should the Court decline to follow any recommendations by any of the parties to this agreement." These provisions made clear that whatever limits the agreement placed on the U.S. Attorney's Office, such limits did not bind the District Court. Even the government's concession in Paragraph 15(a) not to seek forfeiture of the funds in the PSER account was made subservient to the "defendant's obligations set forth in Paragraph 16" to pay restitution according to the schedule set by the court. Given this plain language, it was unreasonable for Tafner to assume that the sentencing court would bind itself to the limitations set forth in Paragraph 15(a).

6

The cases Tafner cites as supporting her position, namely *Gilchrist*, 130 F.3d at 1134, and *United States v. Reyes*, 313 F.3d 1152 (9th Cir. 2002), are inapposite. Those cases involved plea agreements executed under Fed. R. Crim. P. 11(c)(1)(C),[3] not at issue here. Under Rule 11(c)(1)(C), when the defendant and the government "agree that a specific sentence or sentencing range is the appropriate disposition of the case," "such a recommendation or request binds the court once the court accepts the plea agreement." Fed. R. Crim. P. 11(c)(1)(C). The court "may accept or reject" the plea agreement, but it cannot alter the sentence. *Gilchrist*, 130 F.3d at 1133. Both our Court and others have held that when a court's order contravenes a defendant's reasonable understanding of a Rule 11(c)(1)(C) plea agreement, it constitutes a breach of that agreement. *Reyes*, 313 F.3d at 1157-58; *Gilchrist*, 130 F.3d at 1133-34. But the plain language of Tafner's agreement made clear it did not fall under Rule 11(c)(1)(C). It stated, in Paragraphs 21 and 22, that the court was "not bound by [the] agreement nor any recommendations made by the parties" and could use its own discretion to determine the sentence. This was a "recommendation" plea agreement, falling under Fed. R. Crim. P. 11(c)(1)(B). Such agreements do not similarly bind the court's discretion.

Finally, Tafner argues that "any actions taken to enforce the order would result in a violation of the plea agreement by the [g]overnment" because the Attorney General is responsible for collecting unpaid restitution, *see* 18 U.S.C. §§ 3612 & 3664, and it would have to seek forfeiture of her PSER account were she to decline to make a timely payment. This argument is unavailing. The sole reason the Attorney General would bring

_____

[3] This rule was formerly codified as Fed. R. Crim. P. 11(e)(1)(C).

7

an enforcement action against Tafner would be if she failed to comply with her sentence. Such a failure would likely constitute a breach of the plea agreement, given that Tafner committed in Paragraph 16 "to make full restitution in accordance with a schedule to be determined by the court." In turn, the government would have the "the option to either seek specific performance of the agreement or treat it as unenforceable" by bringing an action for remedial relief. *United States v. Williams*, 510 F.3d 416, 427 (3d Cir. 2007) (citing 5 Wayne R. LaFave et al., Criminal Procedure § 21.2(e), at 60 (2d ed. Supp. 2007)). Were Tafner to breach her duty to make timely payments towards restitution, the Attorney General would likely be relieved of its duty to refrain from garnishing Tafner's PSER funds.

## IV.

For the foregoing reasons, we will affirm the judgment of conviction and sentence.